**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BLAKE CONYERS, LAMAR EWING, and KEVIN FLINT, | ) ) | |
| *Plaintiffs,* | ) ) | |
| | ) | |
| *v.* | ) | Case No.: 1:12-cv-06144 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Hon. John J. Tharp, Jr |
| | ) | |
| *Defendant.* | ) | |

**REPLY IN SUPPORT OF MOTION**
**TO DISMISS THE THIRD AMENDED COMPLAINT**

Rather than opposing the Motion to Dismiss the Third Amended Complaint, Plaintiffs' Memorandum in Opposition, ECF No. 65 ("Pls.' Opp."), abandons the constructive bailment theory underlying the complaint and asserts new theories of recovery not articulated in that pleading. These latest theories of recovery rely on facts not alleged or alluded to in the Third Amended Complaint. These facts are also inconsistent with the allegations advanced to date. Because Plaintiffs are not permitted to amend their complaint – now for the fourth time – in an opposition brief, the Court should dismiss the Third Amended Complaint with prejudice.

Yet even if the Court elects to consider the new allegations raised in the opposition, Plaintiffs' claim under 42 U.S.C. §1983 cannot proceed for several reasons. First, although Plaintiffs compare this case to *Gates v. City of Chicago*, 623 F.3d 389 (7th Cir. 2009), the notice at issue in *Gates* was distinct from the notices provided to Plaintiffs at the time of arrest. Plaintiffs' reliance on *Gates* is therefore misplaced. Further, Plaintiffs fail to show they can continue under §1983 based on alleged violations of the Fourth and Fifth Amendments. Finally, as the City argued in its motion to dismiss, the Third Amended Complaint fails to respect the

pleading standards established under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court should thus dismiss this case under Rule 12(b)(6).

## I.     PLAINTIFFS CANNOT AMEND THEIR COMPLAINT IN AN OPPOSITION BRIEF

"It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (citation omitted); *see also Miller v. Gain Fin., Inc.*, 995 F.2d 706, 708 (7th Cir. 1993) (recognizing *Thomason v. Nachtrieb* as the correct standard for a motion to dismiss). Although a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate facts the party hopes to prove, any new allegations must be consistent with the original pleading. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Indeed, "[t]he Seventh Circuit has not authorized a plaintiff to embark on completely new avenues in his answer to a motion to dismiss . . . . [or] to entirely rewrite [plaintiff's] existing complaint." *Ahr v. Commonwealth Edison Co.*, No. 03 C 6645, 2005 WL 6115023, at *7 (N.D. Ill. Feb. 24, 2005). Accordingly, a district court "will not consider additional information in the response that is inconsistent with the complaint, expands the plaintiff's case, or concerns new claims and new topics." *Anzaldua v. Chicago Transit Auth.*, No. 02 C 2902, 2002 WL 31557622, at *2 (N.D. Ill. Nov. 15, 2002) (citing *Thomason*, 888 F.2d at 1205).

Although Plaintiffs' opposition purports to "elaborate[]" on facts contained in the complaint, *see* Pls.' Opp. at 2, the opposition proffers numerous allegations that do not appear in the Third Amended Complaint, and that cannot reasonably be inferred from the information presented in this case to date. These new allegations concern policies and procedures supposedly used by the Cook County Sherriff's Office to operate the Cook County jail, including:

- that jail officials confiscate any notice provided to an arrestee upon entering Cook County jail (*id*. at 4);

- that any notice provided by the City is not accessible to an arrestee upon entering Cook County jail (*id*.);

- that any notice provided by the City on its website is not accessible to an arrestee upon entering Cook County jail (*id*. at 4-5);

- that inmates at Cook County jail are not permitted to access the internet (*id*. at 5);

- that 25 percent of all arrestees sent to Cook County jail remain in custody for more than 30 days (*id*. at 6);

- that inmates at Cook County jail have no means to contact the Evidence and Recovered Property Section ("ERPS") for assistance (*id*. at 7); and

- that inmates at Cook County jail can only make collect calls (*id*.).

None of these allegations appear in the Third Amended Complaint, nor are these "facts" reasonably inferred or intuited from the information advanced by Plaintiffs to support their constructive bailment theory. Moreover, without citation or reference to an extended record of any kind, these allegations, even if true, do not evince a constitutional violation by the City. In fact, the Seventh Circuit has previously rejected similar attempts to bolster opposition briefs as "fruitless." *See, e.g., Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (citing *Car Carriers, Inc. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1994) (noting it was "questionable for the district court to have relied on the plaintiffs' briefs to embellish the conclusory allegations of the complaint")). As in *Bissessur*, this Court should disregard the new allegations concerning the Cook County Sherriff in ruling on the City's motion to dismiss.

In addition, the Court should discount several arguments in the opposition brief that unfairly expand Plaintiffs' case. *See Anzaldua*, 2002 WL 31557622, at *2. Hoping to salvage an otherwise deficient complaint, Plaintiffs' opposition contends:

3

- that it is unlikely arrestees could understand Section 2-84-160 of the Chicago Municipal Code (Pls.' Opp. at 5);

- that it is "irrational" to presume that individuals in custody could knowingly abandon their personal property (*id*.);

- that arrestees are unlikely to understand the forfeiture provisions of Illinois law (*id*. at 6);

- that an arrestee at a jail law library would believe that he or she was required to take no action to preserve property that had been seized by the Chicago Police Department (*id*.);

- that procedures put in place by the City are "impossible for most detainees to follow" (*id*. at 7); and

- that the location and hours of ERPS are somehow objectively inconvenient (*id*.).

Like the factual allegations regarding the operation of the Cook County jail, none of these arguments appear in the Third Amended Complaint, nor are they reasonably inferred from the information propounded by Plaintiffs to support their constructive bailment theory. The Court should thus disregard these arguments when deciding the City's motion to dismiss.

Finally, Plaintiffs' *post hoc* effort to re-style their complaint after *Gates v. City of Chicago*, 623 F.3d at 389, is unavailing. Although the opposition accuses the City of ignoring this case, the facts of *Gates* and the basis on which plaintiffs in *Gates* sought recovery are distinct from any claim or cause of action asserted by Plaintiffs. Contrary to the bailment theory asserted in the Third Amended Complaint, Plaintiffs' opposition proposes that Plaintiffs were denied due process of law because the notice provided to them by the City was inadequate. *See* Pls.' Opp. at 11. Yet this is not the theory of liability under which Plaintiffs premised their request for relief. Accordingly, the City could not have presupposed *Gates* was relevant in response to these allegations. Because Plaintiffs may not supplement or amend their complaint by presenting new theories of liability in opposition to a motion to dismiss, *see Duffy v.*

4

*Ticketserve, Inc.*, 722 F. Supp.2d 977, 990 (N.D. Ill. 2010), the Court should reject Plaintiffs'

attempt to rewrite the Third Amended Complaint in this manner.[1]

## II. EVEN IF PLAINTIFFS' NEW ALLEGATIONS ARE ACCEPTED, THIS CASE IS NOT *GATES*

Even if the opposition properly interposed new allegations regarding the sufficiency of

the notice provided to Plaintiffs, this case is distinguishable from *Gates v. City of Chicago*,

623 F.3d at 389. In *Gates*, a class of arrestees sought the return of individual sums of money

confiscated by the Chicago Police Department ("CPD") upon arrest. *Id.* at 391. The plaintiffs in

*Gates* claimed the CPD's money handling procedures and accompanying notice of those

procedures were violative of their due process rights. *Id.* at 393. The plaintiffs also brought

several state law claims seeking damages and the return of their money. *Id.* This is the end of

any meaningful similarities between *Gates* and this case.

### A. The Notice and Due Process Issues in *Gates* Were Different than the Issues Presented Here

The plaintiffs in *Gates* argued: (1) the notice provided on the then-existing version of the

CPD's property inventory receipt was misleading because it inaccurately stated property owners

would be informed when their property was available for release; (2) the information regarding

the CPD's procedure for returning money was not publically available; and (3) the City failed to

provide an adequate procedure for returning plaintiffs' money and no instructions on how to

---

[1] To the extent the Court wishes to consider the new allegations in the opposition, the City endeavors to respond in Section II of this reply. In so doing, the City does not intend to waive its rights to more fully respond to such further pleadings as the Court may permit, nor suggest the procedure Plaintiffs have employed is permissible or should be condoned by the Court. Rather, the City's efforts to address these allegations are intended to show the futility of Plaintiffs' seemingly endless attempts to frame a cognizable claim. *See Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (quoting *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991)) (further amendment of the complaint is "inappropriate where there is . . . repeated failure to cure deficiencies by amendments previously allowed . . . or futility of the amendment.").

recover it. *Id*. at 392-94. In contrast to the extensive notice provided to Plaintiffs in this case, the notice in *Gates* instructed arrestees to return to the police station where their property was taken, upon which the desk sergeant would provide them with forms and instructions to recover their property. *Id*. at 392. After considering the arguments, the district court granted summary judgment in favor of the City, whereupon plaintiffs appealed. *Id*. at 394.

**B.      The Notice at Issue in *Gates* Was Not Generally Available to the Public**

In reversing the district court's grant of summary judgment in *Gates*, the Seventh Circuit found that because state law remedies were generally available, the City was not obliged to provide individualized notice of those remedies. The City was, however, required to provide plaintiffs with notice of any CPD procedures and rules that were not readily accessible to the public. *Id*. at 399-400. In practice, this meant that to comply with due process requirements, the City was required to inform arrestees of the documents they would need and the procedures they would need to follow to reclaim their money. *Id*. at 400. Because this had not occurred, the court found that the entry of summary judgment in favor of the City was premature. *Id*. at 401.

The court further held that the relevant inquiry was whether the procedures employed by the City satisfied due process concerns with regard to the return of money. *Id*. at 410. The court found that the City's then-existing procedures were not sufficient to address these concerns, as indecision by the criminal courts and arbitrary behavior by arresting officers improperly placed the burden of proof on the arrestee to establish property ownership. *Id*. at 411-12.

**C.      The Reasoning of the Seventh Circuit in *Gates* Is Not Applicable to this Case**

This case is different from *Gates*. As a threshold matter, the constitutional claims in *Gates* were well-articulated. By contrast, the Third Amended Complaint only asserts that the City has "deprived arrestees of rights secured by the Fourth, Fifth, and Fourteenth Amendments

to the Constitution of the United States as well as Illinois law." Pls.' 3d Am. Compl., ECF No. 59, ¶¶ 7, 14, 20. Plaintiffs also point to the Illinois Law Enforcement Disposition of Property Act ("LEDPA"), 765 ILL. COMP. STAT. 1030/1, *et seq.*, however that statute only applies to property "transferred to [the CPD] . . . under circumstances supporting the reasonable belief that such property was abandoned, lost or stolen or otherwise illegally possessed," and not to property that the CPD deems abandoned due to the failure of a known owner to reclaim it. *See* 765 ILL. COMP. STAT. 1030/1. Moreover, LEDPA does not apply to property seized in connection with a search. *See id.* Here, by their own admission, Plaintiffs' property was legally seized incident to arrest, and its ownership was never in question. Only after Plaintiffs failed to reclaim their property did the CPD allegedly destroy or dispose of it. And although plaintiffs in *Gates* raised state law claims, none of those claims were based on the constructive bailment theory advanced by Plaintiffs in this action.

Further, the underlying facts of this case are different from *Gates*. Upon arrest, the notices provided to Plaintiffs included detailed instructions on how and where to recover their personal property. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 61, Ex. 1-3. These notices advised Plaintiffs regarding: (1) what forms they should have received upon arrest; (2) what to do if they did not receive those forms; (3) how to recover personal property, even if incarcerated; and (4) who to contact for assistance. *See id.* The notices further explained the consequences that would result if arrestees failed to reclaim their property within 30 days. *See id.* Unlike *Gates*, the notices provided to Plaintiffs contained contact information and also directed arrestees or their representatives to the CPD's website for additional information, all of which was (and still is) available to the public. Additionally, as a practical matter, *Gates*

7

concerned the City's procedures for handling money, a fungible form of property which, unlike the property at issue here, does not require physical space for retention or storage.

Plaintiffs do not deny they received these notices or that they understood the notices required them to retrieve their personal property within 30 days.  *See* 3d Am. Compl., ECF No. 59, ¶¶ 16-18.  Moreover, as the court in *Gates* made clear, the City is not required to notify arrestees – much less educate them – regarding the content and procedures set forth in publically available statutes.  *Id*. at  398-399.  Plaintiffs' belated attempt to avoid this reasoning by referring to procedures supposedly used by the Cook County Sherriff's Office should thus be considered only in so far as it highlights the deficiencies inherent to the Third Amended Complaint.  The notices provided to Plaintiffs explained that they had 30 days to reclaim their personal property, and further explained how this could be done, even if Plaintiffs remained incarcerated.  It is undisputed that Plaintiffs received this information and that such information was publically available.  *See* 3d Am. Compl., ECF No. 59, ¶¶ 16-18.  Accordingly, as *Gates* confirms, the City has complied with all requirements for due process regarding the retention and return of personal property.

The Seventh Circuit's discussion in *Gates* of *City of West Covina v. Perkins*, 525 U.S. 234 (1999), is particularly instructive on this point.  The question considered by the Supreme Court in *West Covina* was "whether the Constitution requires a State or its local entities to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution."  *Id*. at 236.  As noted by the Seventh Circuit in *Gates*, the Supreme Court answered this question by explaining:

> The primary purpose of the notice required by the Due Process Clause . . . is to ensure the opportunity for a meaningful hearing. Therefore, due process required officers seizing property to "take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return."
>
> "No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options."

*Gates*, 623 F.3d at 398 (quoting *West Covina*, 525 U.S. at 240-241). Plaintiffs' opposition seeks to impose a duty on the City to provide a form of notice the Supreme Court has already determined is not required to comply with due process. Indeed, the notices provided to Plaintiffs supplied all information the plaintiffs in *Gates* claimed was either unavailable or incorrect. Moreover, as the notices here demonstrate, the CPD's property inventorying procedures have been substantially improved since the Seventh Circuit considered *Gates*.

In the end, Plaintiffs' grievance is that the City failed to retain and store their property for a longer period of time. However, even if this was physically possible, the City is not required to do so in order to comply with due process requirements, state statutes, or municipal ordinances. Due process considerations do not require the City to provide the best notice practical, but only a constitutionally sufficient notice. *See Krecioch v. U.S.*, 221 F.3d 976, 979-80 (7the Cir. 2000). The City has done that here. Without supporting authority, the opposition presupposes due process requires more. Yet the decision in *Gates* does not go this far. As such, Plaintiffs' reliance on *Gates* and their corresponding efforts to portray their complaint as a companion case are unavailing.

### III.    PLAINTIFFS HAVE NO CAUSE OF ACTION UNDER THE FOURTH AMENDMENT

As the City noted in its motion to dismiss, the Seventh Circuit has held that an action for recovery or restitution of property "is not, and never has been, a concern of the Fourth Amendment," *Lee v. City of Chicago*, 330 F.3d 456, 465 (7th Cir. 2003), and "a government's decision regarding how and when to return once lawfully obtained property 'raises different issues, which the text, history, and judicial interpretations of the Fourth Amendment do not illuminate.'"  *Id*. (quoting *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989)).  In *Lee*, the plaintiff challenged the City's practice of charging towing and storage fees prior to the return of impounded vehicles.  *See id*. at 459.  Affirming the dismissal of the plaintiff's cause of action under §1983, the Seventh Circuit concluded the seizure of a vehicle was complete at the time of impound, and that "[t]he [Fourth] amendment . . . cannot be invoked by the dispossessed owner to regain his property."  *Id*. at 466.

Plaintiffs' only counter to this argument is that "[i]t would be ludicrous to assert that it is reasonable under the Fourth Amendment to seize an arrestee's personal property, without any concomitant duty to safeguard the integrity of that property."  Pls.' Opp. at 12-13.  No citation is offered to support this premise, nor is any further discussion provided.    Plaintiffs' argument - that a violation of the Fourth Amendment can be alleged under §1983 for the entire period during which the City retains personal property – is the precise theory of liability rejected by the Seventh Circuit in *Lee*.  Indeed, although Plaintiffs cite Judge Wood's concurrence in *Lee* in support of their position, *see id*. at 12, the concurrence acknowledges the majority holding "that the Fourth Amendment has nothing to say about a seizure beyond the instant when that seizure occurs."  *Lee*, 330 F.3d at 474 (Wood, J., concurring).

10

Plaintiffs' citation to *Colorado v. Bertine*, 479 U.S. 367 (1987), is similarly unhelpful. *Bertine* was a criminal case in which the petitioner argued that evidence obtained pursuant to an inventory search was inadmissible under the Fourth Amendment. *See id*. at 368-69. The case did not concern a cause of action under §1983 and did not involve any effort by the petitioner to recover or reimburse his personal property. In fact, the property at issue in *Bertine* included cash and drug paraphernalia, which were secured for investigation and trial at the time of arrest (as opposed to made available for return). *See id*. at 369. Accordingly, this Court should follow the Seventh Circuit's holding in *Lee* to conclude that Plaintiffs have no cause of action under §1983 based on a "continuing" violation of the Fourth Amendment.

## IV. PLAINTIFFS HAVE NO CAUSE OF ACTION UNDER THE FIFTH AMENDMENT

Citing *Yee v. City of Escondido, California*, 503 U.S. 519 (1992), Plaintiffs argue they are not required to exhaust state law remedies prior to alleging a takings claim under the Fifth Amendment. Pls.' Opp. at 13-14. According to Plaintiffs, their criticism of the City's procedures under §1983 is a "facial" challenge which "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property." *Id*. at 14. This argument is without merit.

As a threshold matter, *Yee* defines a "facial" challenge to be one in which an "ordinance does not 'substantially advance' a 'legitimate state interest' no matter how it is applied." *Yee*, 503 U.S. at 534 (citation omitted). As the opposition makes clear, Plaintiffs are not contesting the power of a governmental entity to dispose of abandoned property in its possession. *See* Pls.' Opp. at 6. On the contrary, Plaintiffs' argument is that the City's ordinance does not contain a corresponding six-month period to identify the owner of abandoned property, as set forth under 765 ILL. COMP. STAT. 1030/1. *See* Pls.' Opp. at 6. Consequently, Plaintiffs cannot

11

characterize their claim as a "facial" challenge, as they offer no argument or allegation that the City has an indefinite obligation to safeguard or retain abandoned property, particularly where the owner is already known.[2]

Notwithstanding that point, Plaintiffs' cause of action under §1983 is based almost exclusively on the loss of economic value sustained by Plaintiffs as the result actions taken by the City. Indeed, as the Third Amended Complaint states, each Plaintiff was "permanently deprived of the use and enjoyment of his above referenced personal property." *See* Pls.' 3d Am. Compl., ECF No. 59, ¶¶ 26, 31, 35, 36. Plaintiffs are now seeking compensation for the total value of that property, which was previously alleged to be in excess of $20,000.00 for only two of the three Plaintiffs. *See* Pls.' 2d Am. Compl., ECF No. 42, Prayer for Relief. Accordingly, Plaintiffs cannot credibly argue under *Yee* that their cause of action does not depend on the extent to which they have been deprived of the economic use of their property.

Finally, *Yee* did not concern a cause of action under §1983 and did not involve any effort by the petitioners to recover or reimburse their personal property. As the cases cited by the City demonstrate, to assert a valid claim for violating the Fifth Amendment under §1983, Plaintiffs must first pursue all available state law remedies before filing an action in federal court. *See Williamson Cnty. v. Hamilton Bank*, 473 U.S. 172 (1985); *Peters v. Vill. of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007); *Greenfield v. Macklin*, 361 F.3d 934, 961 (7th Cir. 2004). Indeed, the *Yee* court even noted that plaintiffs in that case had first raised a takings claim in state court. *See Yee*, 503 U.S. at 534. Because Plaintiffs have failed to pursue any state law remedies in the

---

[2]      Even if Plaintiffs had made such an argument, LEDPA (765 ILL. COMP. STAT. 1030/1, *et seq.*) does not apply to their personal property, nor does it mandate any type of holding period where the owner of property is already known. *See supra* at 6-7.

instant case, they have no cause of action under §1983 based on an alleged violation of the Fifth Amendment.

## V. THE THIRD AMENDED COMPLAINT FAILS TO SATISFY THE PLEADING REQUIREMENTS SET FORTH UNDER *ASHCROFT V. IQBAL*

Contrary to Plaintiffs' suggestion, the City does not propose that a "heightened pleading standard" applies to this case. *See* Pls.' Opp. at 14. As the City argued in its motion to dismiss, the Third Amended Complaint fails to conform to the basic pleading requirements established under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as it fails to allege sufficient factual content which, if true, would allow the Court to infer that the City is liable for the misconduct alleged. Moreover, the Third Amended Complaint is replete with "mere legal conclusions," which are insufficient to state a claim or survive a motion to dismiss. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). Indeed, although Plaintiffs accuse the City of various illegalities and even conspiracy, *see* 3d Am. Compl., ECF No. 59, ¶ 7, these allegations are not supported by well-pleaded facts and do not contain the level of detail required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a).

Plaintiffs' only response to this charge is that the City's argument is "wholly without merit." *See* Pls.' Opp. at 14. No further discussion or exposition is provided. As noted above, *see supra* at 1-4, Plaintiffs' opposition improperly attempts to amend the Third Amended Complaint by proffering facts and arguments that do not appear in the original pleading. To that point, Plaintiffs' announcement of their intention to "elaborate[]" on the factual allegations contained in the complaint, *see* Pls.' Opp. at 2, is a tacit acknowledgment of the degree to which the opposition seeks to disguise the shortcomings of the present complaint. The Court should thus dismiss the Third Amended Complaint under Rule 12(b)(6), as it fails to conform to the basic pleading requirements established under *Ashcroft v. Iqbal*, 556 U.S. at 662.

## CONCLUSION

For the reasons stated above and in the City's memorandum in support of its motion to

dismiss, the Court should dismiss the Third Amended Complaint with prejudice.

Dated:  December 27, 2013                          Respectfully submitted,

                                                   **THE CITY OF CHICAGO**


                                          By:   s/ Allan T. Slagel
                                                _____
Allan T. Slagel (ARDC No. 6198470)              One of its Attorneys
Jonathan B. Amarilio (ARDC No. 6292274)
Megan K. McGrath (ARDC No. 6288408)
Brian Weinthal (ARDC No. 6304488)
SHEFSKY & FROELICH LTD.
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone:      (312) 527-4000
Facsimile:      (312) 527-4011
Email:          aslagel@shefskylaw.com
                jamarilio@shefskylaw.com
                mmcgrath@shefskylaw.com
                bweinthal@shefskylaw.com
1260727_2

14