# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BLAKE CONYERS, LAMAR EWING, and KEVIN FLINT, individually and for a class, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12 C 06144 |
| CITY OF CHICAGO, | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Blake Conyers, Lamar Ewing, and Kevin Flint, individually and on behalf of a class, bring claims under 42 U.S.C. § 1983 and a state law bailment claim against the defendant, the City of Chicago (the "City"). The plaintiffs allege that the City's policies pertaining to the destruction of personal property items seized from arrestees violate the Fourth, Fifth, and Fourteenth Amendments, as well as Illinois law. The City has moved to dismiss the plaintiffs' Third Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6). For the reasons stated below, the City's motion is granted.

## BACKGROUND

The City requires that its police officers remove and inventory all personal property in the possession of arrestees who are detained at a City police station.[1] At the time of arrest, the City

---

[1] In reviewing a motion to dismiss, the Court may consider: (1) the complaint and any documents attached to it, (2) documents attached to the motion to dismiss that are critical to the complaint and referred to in it, (3) additional facts set forth in the response to the motion or in any documents attached to the response, as long as those additional facts are consistent with the allegations in the complaint, and (4) information that is subject to proper judicial notice (such as public records). *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). When considering these materials, the

provides such arrestees with a Chicago Police Department ("CPD") inventory receipt identifying the seized property and a written notice explaining how that property can be retrieved. Pursuant to CPD policy, if an arrestee is subsequently transferred to the Cook County Jail (the "Jail"), the City sends certain types of inventoried personal property with the arrestee to the Jail and retains all other types of inventoried personal property.[2] Since September 14, 2007, the City's policy has been to destroy any retained personal property of arrestees transferred to the Jail that is not claimed within 30 days of the inventory date.

Each of the plaintiffs had personal property items seized and ultimately destroyed as a result of the City's policies. Conyers was arrested by City police officers on or about February 26, 2012, while in lawful possession of an earring, a bracelet, and two cell phones. This property was removed and inventoried by the City, retained by the City upon Conyers' transfer to the Jail, and destroyed by City personnel because it was not claimed within 30 days. Ewing was arrested by City police officers on or about December 20, 2012, while in lawful possession of a wallet, a debit card, a library card, and two cell phones. This property was removed and inventoried by the City, retained by the City upon Ewing's transfer to the Jail, and destroyed by City personnel because it was not claimed within 30 days. Flint was arrested by City police officers on or about January 1, 2013, while in lawful possession of a cell phone and a ring with a small stone. This property was removed and inventoried by the City, retained by the City upon Flint's transfer

---

Court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). The factual background is therefore summarized with this standard in mind and drawn primarily from the Complaint (Dkt. 59).

[2] CPD Notice 07-40, as amended by CPD Special Order S06-01-12, provides that the following types of inventoried personal property are sent with arrestees to the Jail: outer garments, U.S. currency of $500 or less, one plain metal ring without stones, government-issued identification cards, prescription eyeglasses, prescription medications, shoelaces, belts, keys, court documents, CPD receipts, credit cards, and debit cards.

the Jail, and destroyed by City personnel because it was not claimed within 30 days. All three plaintiffs remained incarcerated in the Jail throughout the 30-day period following their respective arrests.

The written notice provided to each of the plaintiffs at the time of arrest (the "Notice") included the following information:

> You may get inventoried property back by following the procedures detailed below. Information on how to get back inventoried property is also available at www.ChicagoPolice.org. If you have any questions, please contact the CPD Evidence and Recovered Property Section ("ERPS") at (312) 746-6777. ERPS is located at 1011 S. Homan Avenue, Chicago, Illinois 60624 and is open Monday through Friday (8:00 a.m. to 3:00 p.m., closed holidays).
>
> **Property Available for Return to Owner:**
> If your receipt is marked "Property Available for Return to Owner" you may get your property back by providing the receipt and a photo ID at ERPS. If you do not contact the CPD to get your property back within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin under Illinois Law, 765 ILCS 1030/1, et seq."
>
> If you are in jail or incarcerated, and your receipt is marked "Property Available for Return to Owner," you may get money returned to you by sending copies of your receipt, your photo ID and the name of the facility where you are jailed or incarcerated to: Chicago Police Department Evidence and Recovered Property Section; 1011 S. Homan Avenue, Chicago, Illinois, 60624. If the property is money, a check will be sent to you at the facility where you are jailed or incarcerated.

Ex. 2 to Mem. in Support, Dkt. 61-1, at 4.[3] Although the Notice provides a procedure for incarcerated individuals to claim property that is money, it does not specify a procedure for such

---

[3] The Complaint quotes only one sentence of the Notice ("If you do not contact the CPD to get your property back within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin under Illinois Law, 765 ILCS 1030/1, et seq."). *See* Complaint, Dkt. 59, ¶ 17. But the City

individuals to claim non-money property.[4] Plaintiffs Conyers and Ewing nevertheless attempted to retrieve their property while incarcerated before learning that it had been destroyed. Conyers "filed a grievance with the Cook County Jail, requested assistance from the jail's social worker,

---

included a complete copy of the Notice as an exhibit to its opening brief, and the plaintiffs have not raised any objections regarding this document. Since the Notice is critical to the Complaint and referred to in it, the Court may consider the copy provided by the City in reviewing the motion to dismiss. *See Geinosky*, 675 F.3d at 745 n.1. The City also urges the Court to consider the additional instructions posted on the website listed on the Notice. The Court declines to take judicial notice of those instructions, however, since even assuming—without deciding—that that the Court may take judicial notice of information on the CPD website, the instructions that are currently posted are not necessarily reflective of the instructions that were posted throughout the entire relevant time period for this lawsuit. *See Information Regarding Personal Property Seized by the Chicago Police Department*, Chicago Police, http://home.chicagopolice.org/wp-content/uploads/2014/12/Information-Regarding-Personal-Property-Seized-By-CPD.pdf (listing an effective date of September 2014).

[4] According to the Complaint, the Notice provides that an incarcerated person can claim his property by sending a copy of his receipt, a copy of his photo identification card, and the name of the facility where he is detained to ERPS. *See* Complaint, Dkt. 59, ¶ 16. The text of the Notice itself, however, states that this procedure is only available for property that is money. *See* Ex. 2 to Mem. in Support, Dkt. 61-1, at 4 ("[Y]ou may get *money* returned to you by sending copies of your receipt, your photo ID and the name of the facility where you are jailed or incarcerated to [ERPS] . . . . If the property is *money*, a check will be sent to you . . . ." (emphases added)). *See generally Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."). The Notice provides no corresponding procedure for obtaining non-money property without going to ERPS in person. The repeated contentions to the contrary in the City's briefs are thus both incorrect and inexplicable (especially given that it was the City that created the Notice and provided the full text of the Notice to the Court). *See* Mem. in Support, Dkt. 61, at 3 (citing to the text of the Notice in support of the propositions that "the Notice . . . advises that arrestees may reclaim their personal property and money at [ERPS]" and "[i]f an individual is unable to reclaim his or her property in person, he or she may designate an authorized representative to do so instead"); *id.* at 3-4 (stating that plaintiff Ewing "availed [himself] of the procedures set forth in the Notice" when he "sent an authorized representative to ERPS in order to retrieve his personal effects"); Reply, Dkt. 69, at 7 (stating that the Notice explained "how to recover personal property, even if incarcerated"). The Notice makes no mention of the concept of "authorized representative" or, indeed, of any procedure that would enable incarcerated individuals to claim non-money property.

and wrote a letter to [ERPS]."[5] Complaint, Dkt. 59, ¶ 24. Ewing "prepared a form authorizing his cousin to [claim his] property" and had his cousin go to ERPS to attempt to retrieve the property before the 30-day period had elapsed. *Id.* ¶ 29; Response, Dkt. 65, at 8. Flint made no attempt to retrieve his property while incarcerated but eventually learned of its destruction upon his release.

The plaintiffs allege that the City's policies pertaining to the destruction of retained personal property of arrestees transferred to the Jail deprive arrestees of rights secured by the Fourth, Fifth, and Fourteenth Amendments. The plaintiffs also allege that the City's retention of arrestees' personal property creates a constructive bailment under Illinois law, and that the City violates its obligations as bailee by destroying the property. The Court has jurisdiction over the plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1343 and has supplemental jurisdiction over their state law claim pursuant to 28 U.S.C. § 1367. Pursuant to Rule 12(b)(6), the City has moved to dismiss the Complaint on the basis that it fails to state a claim under § 1983.[6]

## ANALYSIS

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although a court must accept all of the plaintiff's factual allegations as true when reviewing a complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption. *Id.* "Where a complaint pleads facts that are

---

[5] These reclamation attempts were made sometime between February 26, 2012, when Conyers was arrested, and July 2012, when he learned that his property had been destroyed. It is unclear, however, whether any of the attempts were made within 30 days of Conyers' arrest.

[6] The City has not raised any direct challenges to the state law bailment claim.

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To state a claim against a municipal entity under § 1983, a plaintiff must sufficiently allege that a person acting under color of state law violated a right secured by the Constitution or laws of the United States, and that the violation was caused by a policy or custom of the defendant. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). The City argues that the Complaint (1) fails to identify a cognizable § 1983 injury based on the Fourth Amendment, (2) does not assert a valid § 1983 claim based on the Fifth or Fourteenth Amendments because the plaintiffs have not exhausted state law remedies, (3) fails to identify a cognizable § 1983 injury based on the Fourteenth Amendment, and (4) does not contain sufficient factual content about the City's policies to support *Monell* liability.

**1. Fourth Amendment**

A complaint states a Fourth Amendment violation if the defendant's alleged conduct constitutes an unreasonable seizure. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). Since "a seizure occurs upon the initial act of dispossession," *Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 660 (7th Cir. 2012), the Fourth Amendment is not implicated when a plaintiff's challenge concerns recovery of property that was lawfully seized and then retained by the defendant. *See Lee v. City of Chi.*, 330 F.3d 456, 466 (7th Cir. 2003) ("Once an individual has been meaningfully dispossessed, the seizure of the property is complete, and once justified by probable cause, that seizure is reasonable. The amendment then cannot be invoked by the dispossessed owner to regain his property."); *Waldon v. Wilkins*, 400 F. App'x 75, 80 (7th Cir. 2010) (citing *Lee*, 330 F.3d at 466) (rejecting a Fourth Amendment claim where the plaintiffs

"ha[d] not alleged anything unreasonable about the seizure itself"). In this case, the plaintiffs do not challenge the City's policy of removing and inventorying arrestees' personal property; they challenge only the City's policies pertaining to the retention of inventoried property. *See* Response, Dkt. 65, at 2, 4. Accordingly, since the plaintiffs have not alleged that the City's seizure of arrestees' property is unreasonable, they have not stated a cognizable § 1983 injury based on the Fourth Amendment.

**2. Fifth Amendment**

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. A plaintiff cannot bring an as-applied Takings Clause challenge in federal court until he has pursued all state law remedies that are available and adequate. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985); *Peters v. Vill. of Clifton*, 498 F.3d 727, 731-32 (7th Cir. 2007). A plaintiff may, however, raise a facial challenge based on the Takings Clause without first exhausting state law remedies. *See San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 U.S. 323, 345-46 (2005) (citing *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)); *Peters*, 498 F.3d at 732. That is because "facial takings challenges . . . by their nature request[] relief distinct from the provision of 'just compensation.'" *San Remo*, 545 U.S. at 345; *see also Ezell v. City of Chi.*, 651 F.3d 684, 698 (7th Cir. 2011) ("In a facial challenge like this one, the claimed constitutional violation inheres in the terms of the statute, not its application. . . . The remedy is necessarily directed at the statute itself and must be injunctive and declaratory; a successful facial attack means the statute is wholly invalid and cannot be applied to anyone."). A plaintiff has presented a facial takings challenge to a municipal policy or ordinance if he argues that the relevant policy or ordinance "did not substantially advance a

7

legitimate state interest regardless of how it was applied." *Sorrentino v. Godinez*, 777 F.3d 410, 414 (7th Cir. 2015) (citing *San Remo*, 545 U.S. at 345, and *Yee*, 503 U.S. at 534).

In this case, the plaintiffs contend that their Fifth Amendment-based § 1983 claim makes only a facial challenge and may proceed on that basis.[7] Response, Dkt. 65, at 13-14. But it is clear that the plaintiffs do not advance a facial *takings* challenge. The Complaint asserts that Municipal Code § 2-84-160 provides for the disposal of property "not claimed within 30 days after seizure," Complaint, Dkt. 59, ¶ 18, and that the City's policy "has been to destroy the personal property of any arrestee that remained in the custody of the City 30 days after the arrestee had been transferred to the [Jail]," *id.* ¶ 14. Although the plaintiffs make the conclusory claim that the City's policy violates the Takings Clause (among other constitutional provisions), *see id.* ¶¶ 7, 14; Response, Dkt. 65, at 13-14, the Complaint makes no mention of "just compensation" or "public use." Instead, the Complaint presents detailed information about the notice given to arrestees and alleges that the City failed to provide adequate notice that it would destroy unclaimed property after 30 days. Complaint, Dkt. 59, ¶¶ 15-17. Specifically, the plaintiffs allege that the City failed to comply with the notice requirements set forth under Illinois law and failed to satisfy due process standards. *Id.* ¶ 20.

The gravamen of the Complaint, then, is not that the City destroyed the plaintiffs' property without providing just compensation; it is that that City destroyed their property without providing adequate notice.[8] Indeed, if the Complaint's two references to the Fifth Amendment

---

[7] In light of this contention, to the extent the Complaint can be read as making an as-applied takings challenge, that claim is dismissed without prejudice (but any such claim cannot be pursued unless and until the plaintiffs have exhausted potential remedies under state law).

[8] The plaintiffs' brief confirms this view of the Complaint. *See* Response, Dkt. 65, at 3-4 ("The City . . . will only retain this property for 30 days and then . . . it will destroy the arrestee's property without further notice. Plaintiffs contend that this aspect of the City's policy is

were removed, one reading the Complaint would have no idea that the allegations were intended to support such a claim. Accordingly, the Court does not read the Complaint to assert a facial takings challenge. To the extent that the Complaint alleges that the notice provided by the City was constitutionally inadequate, it raises not a takings claim but a due process claim. *That* claim is discussed further below.[9]

The Court notes as well that *if* the plaintiffs were actually making a facial takings challenge to the City's policy, the Court would be required to address whether the plaintiffs have standing to make such a challenge. Constitutional standing requires that the plaintiff have sustained, or face, an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). In the context of a facial challenge, standing requires an injury arising from the enactment of a law or policy rather than its application; a facial takings challenge is premised on the effect of the law or policy on a plaintiff's property by virtue of its enactment or continuing existence. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 & n.10 (1997) ("Such facial challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed, but face an uphill battle, since it is difficult to demonstrate that mere enactment of a piece of legislation deprived [the owner] of economically viable use of [his] property." (alterations in original) (citations and internal quotation marks omitted); *see also, e.g.*, *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (en banc) ("[I]n the takings context, the basis of a facial challenge is that the very

---

unconstitutional."). The City is correct, then, to say that the plaintiffs do not contest the City's power to dispose of unclaimed property. *See* Reply, Dkt. 69, at 11.

[9] To the extent that the Complaint alleges that the City failed to comply with the requirements of Illinois law concerning retention of seized property, that is a state law issue, not one that implicates the federal Constitution.

enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed." (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993)) (internal quotation marks omitted)). Often, for example, such claims are asserted in cases involving laws governing the use of property, where the plaintiffs have a basis to allege that enactment of an ordinance or regulation deprives them of some or all of the value of their property, without regard to whether, or how, the governmental restriction was actually applied to them. *Yee v. City of Escondido,* 503 U.S. 519 (1992), the case on which the plaintiffs untenably rely for their argument that the Complaint states a facial takings challenge, was such a case. *See also, e.g.*, *Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 467 (7th Cir. 2002). But here, the mere enactment, or existence, of the City's ordinance did nothing to injure the plaintiffs; it is only the application of the ordinance to their property that effected any "taking" of that property. The plaintiffs suffered no injury at all from the existence of the City's policy until that policy was *applied* to them and resulted in the destruction of their property. As the Court concludes that the plaintiffs have not actually asserted a facial takings claim, however, it is unnecessary to definitively resolve this jurisdictional question.

### 3. Fourteenth Amendment

Due process requires both adequate procedures for reclaiming seized property and adequate notice of those procedures. *See Gates v. City of Chi.,* 623 F.3d 389, 394, 405 (7th Cir. 2010). The purpose of adequate notice is to ensure that the owner of the property can pursue available remedies for its return. *See id.* at 398 (citing *City of West Covina v. Perkins*, 525 U.S. 234 (1999)). Where the procedures for reclaiming seized property "are established by published, generally available state statutes and case law, no individualized notice of those procedures is

required." *Id.* (citing *West Covina*, 525 U.S. at 241). Where, however, the procedures "are not available in documents that are published and generally available," individualized notice of the procedures is required. *Id.* at 400 (citing *West Covina*, 525 U.S. at 242). In addition, any individualized notice provided—whether required or not—cannot be misleading. *See id.* at 401 (vacating summary judgment for the City on the plaintiffs' due process claim and stating that the City cannot mislead arrestees about the procedures for reclaiming property).

In this case, the premise of the plaintiffs' due process claim is that the Notice is misleading because it does not clearly indicate that owners of seized property only have 30 days to claim their property before it will be destroyed.[10] The Notice states that property not claimed within 30 days of the inventory date "will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin under Illinois Law, 765 ILCS 1030/1, et seq." Complaint, Dkt. 59, ¶ 17. The ordinance referenced in the Notice provides that property seized by the CPD will be destroyed, auctioned, or re-appropriated for City use if it is not claimed within 30 days of (1) "the final disposition of the court proceedings . . . in connection with which [the] property was seized," or (2) the date of seizure, if there are no such court proceedings. Chi. Mun. Code § 2-84-160. The statute referenced in the Notice is the Law Enforcement Disposition of Property Act ("LEDPA"), which provides, *inter alia*, that owners of

---

[10] Although the Notice does not set forth the procedures for incarcerated individuals to reclaim non-money property, *see* note 4, *supra*, and it appears possible that those procedures are not "published and generally available," the plaintiffs have not asserted a due process claim based on failure to provide individualized notice. Therefore, the Court does not address the viability of that potential claim. In addition, although the plaintiffs state in their brief that they "complain about inadequate procedures" for reclaiming their seized property, Response, Dkt. 65, at 11, the Complaint does not describe the procedures for incarcerated individuals to reclaim non-money property, *see* note 4, *supra*, and the Court does not read the Complaint to assert a due process claim that the reclamation procedures are constitutionally deficient. As discussed in Section 2 of this opinion, the clear thrust of the Complaint is that the notice provided by the City was inadequate. To the extent that the plaintiffs intended to assert any due process claim based on inadequate reclamation procedures, such a claim has not been adequately stated.

property covered by LEDPA have six months to recover their property. *See* 765 ILCS §§ 1030/3, 1030/5.

The plaintiffs concede that Municipal Code § 2-84-160 establishes that the type of property at issue will be disposed of if not claimed within 30 days of seizure.[11] But they argue that the Notice is nevertheless misleading because the reference to the ordinance is immediately followed by a reference to "the forfeiture process . . . under [LEDPA]," which makes the sentence as a whole suggest that the City does not in fact dispose of arrestees' unclaimed personal effects after 30 days, but instead begins at that point to institute forfeiture proceedings based on the procedures outlined in LEDPA (regardless of whether or not LEDPA itself actually applies). Since LEDPA provides for a six-month recovery period, the plaintiffs argue, the Notice could mislead arrestees into believing that they have more than 30 days in which to seek to recover their property.

The Court agrees that the phrasing of the Notice could reasonably suggest to arrestees who consult the text of LEDPA and Municipal Code § 2-84-160 that they have more than 30 days to recover their property. To the extent that the City's actual policy is to dispose of property not claimed within 30 days, then, the plaintiffs have adequately alleged that the Notice is

---

[11] Both sides apparently regard the type of property at issue in this case as property not seized "in connection with" court proceedings within the meaning of Municipal Code § 2-84-160. Although the ordinance might be read to allow an arrestee to claim his inventoried personal property until up to 30 days after the conclusion of the criminal case in connection with which he was arrested, the Notice reveals that the City interprets the phrase "the court proceedings . . . in connection with which [the] property was seized" to apply only to court proceedings in which the property seized is itself at issue (*e.g.*, as evidence). *See* Ex. 2 to Mem. in Support, Dkt. 61-1, at 4 (indicating that "Property Available for Return to Owner" will be considered abandoned under the ordinance if not claimed within 30 days of the inventory date, while "Property Held for Evidence or Investigation" must be claimed, pursuant to the ordinance, within 30 days of "the final court date of the proceedings in which [the] property was inventoried" or within 30 days of the inventory date, if there are no court proceedings involved). And the plaintiffs do not challenge the ordinance itself as unclear or contest the City's interpretation of the ordinance.

constitutionally deficient. *Cf. Gates,* 623 F.3d at 401 ("[T]he City may not mislead arrestees about the necessary procedures for the return of their [property] . . . .").[12]

That the plaintiffs have adequately alleged that the City provides constitutionally deficient notice, however, does not establish that they have standing to pursue their Fourteenth Amendment-based claim. Although the theory the plaintiffs advance is that the Notice misleads arrestees into believing that they have more than 30 days to seek the return of their property, the plaintiffs have not alleged that they *were* misled. The Complaint does not assert that the plaintiffs read the Notice and detrimentally relied on it by waiting too long to claim their property. In fact, the Complaint expressly alleges that two of the plaintiffs "diligently" sought to recover their property, Complaint, Dkt. 59, ¶¶ 24, 29, and that at least one of the plaintiffs sought the return of his property within 30 days of his arrest, *id.* ¶ 29; Response, Dkt. 65, at 8. Moreover, in their brief, the plaintiffs assert that "Jail officials take [the Notice] from arrestees when they reach the Cook County Jail" and that the Notice is thus "inaccessible" to arrestees once they are at the Jail.

---

[12] In addition to arguing (unsuccessfully) that the plaintiffs have not adequately alleged constitutionally deficient notice, the City also contends that the Fourteenth Amendment-based § 1983 claim should be dismissed because the plaintiffs failed to exhaust state law remedies. That argument is unavailing, however, since the Seventh Circuit has held that the exhaustion requirement for claims of due process violations does not apply when—as here—a complaint asserts municipal liability under *Monell*. *See Wilson v. Civil Town of Clayton*, 839 F.2d 375, 380 (7th Cir. 1988). The exhaustion requirement for due process claims, established in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986), applies only to random and unauthorized acts as to which there is no municipal liability under *Monell*. That is because when "conduct is engaged in pursuant to the custom or policy of a municipality, it can hardly be viewed as random or unauthorized" action that must be redressed through post-deprivation state law remedies. *Follkie v. City of Chi.*, No. 97 C 154, 1997 WL 527304, at *4 (N.D. Ill. Aug. 19, 1997) (citing *Wilson*, 839 F.2d at 380). Accordingly, where a *Monell* claim has been alleged, the exhaustion requirement has no application. *Wilson*, 839 F.2d at 380 ("[A] complaint asserting municipal liability under *Monell* by definition states a claim to which *Parratt* is inapposite."). Since the exhaustion requirement does not apply to the plaintiffs' Fourteenth Amendment-based § 1983 claim, the Court need not consider the parties' supplemental briefs on the availability of state law remedies for the alleged due process violation (Dkt. 74 and Dkt. 78).

Response, Dkt. 65, at 4-5. Although these new allegations are irrelevant to the question of the City's liability, as the City points out, *see* Reply, Dkt. 69, at 2-3, they highlight the absence of any allegation that the plaintiffs relied on the Notice. The plaintiffs were injured by the allegedly misleading Notice only if they relied on it to their detriment; if they "diligently" sought to recover their property within the City's 30-day reclamation period despite reading the Notice, or if they did not read and rely on the Notice, then there is no causal connection between the injury they claim (the loss of their property) and the alleged constitutional violation (the misleading Notice).

This is not an argument raised by the City, but it is an argument that concerns the plaintiffs' standing and, therefore, this Court's jurisdiction; the Court is thus obliged to raise the issue *sua sponte*. *See Monsanto*, 561 U.S. at 149 (noting that constitutional standing requires that the injury by "fairly traceable to the challenged action"). It is the plaintiffs' burden to establish standing, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and in this context that requires them to allege facts sufficient, taken as true, to plausibly establish that they relied on the defective aspects of the Notice. *See Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995) ("[W]e agree with the holdings of other circuits that a plaintiff must demonstrate reliance on the allegedly defective denial notices [in order to satisfy the requirements of Article III standing]."). The plaintiffs have not done so and, accordingly, their § 1983 claim based on the Fourteenth Amendment cannot go forward as presently alleged.[13]

---

[13] In light of the above rulings dismissing the plaintiffs' § 1983 claims, the Court need not address the City's argument that the Complaint contains insufficient factual content about the City's policies to support *Monell* liability.

*   *   *

For the reasons set forth above, the City's motion to dismiss is granted. The Fourth Amendment-based § 1983 claim is dismissed with prejudice. The Fifth Amendment-based § 1983 claim is dismissed without prejudice to the extent that it presents an as-applied challenge (but any such claim cannot be pursued unless and until the plaintiffs have exhausted potential remedies under state law). The Complaint fails to assert a facial challenge based on the Fifth Amendment, and cannot do so given that enactment of the ordinance did not effect a taking of the plaintiffs' property, so that theory is also closed to the plaintiffs. The Fourteenth Amendment-based § 1983 claim is dismissed without prejudice for lack of subject matter jurisdiction—specifically, standing. The plaintiffs will be given leave to replead that claim within 28 days. In the event the plaintiffs do not do so, the Court will decline to exercise jurisdiction over the state law bailment claim (to the extent that such a theory has been asserted), enter judgment for the City, and dismiss the case, which will make this ruling final and appealable.

Date: March 24, 2015

John J. Tharp, Jr.
United States District Judge