# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BLAKE CONYERS, LAMAR EWING, AND KEVIN FLINT, individually and for a class | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12 C 06144 |
| CITY OF CHICAGO, | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Blake Conyers, Lamar Ewing, and Kevin Flint, individually and on behalf of a class, bring claims under 42 U.S.C. § 1983 against the City of Chicago (the "City"). The plaintiffs allege that the City's policies pertaining to the destruction of personal property items seized from arrestees at the City's police station violate the Fifth and Fourteenth Amendments. The City has moved to dismiss the plaintiffs' Fourth Amended Complaint pursuant to Rule 12(b)(6). Def.'s Mot. to Dismiss Fourth Am. Compl., ECF No. 88. For the reasons stated below, the City's motion is granted with respect to the Fifth Amendment claim, but the plaintiffs may proceed on their Fourteenth Amendment procedural due process claim.

## BACKGROUND

The City requires that its police officers remove and inventory all personal property in the possession of arrestees who are detained at the City police station. At the time of arrest, the City provides arrestees with a Chicago Police Department ("CPD") inventory receipt identifying the seized property and a written notice explaining how that property can be retrieved. Fourth Am. Compl., ECF No. 81, ¶ 15. Pursuant to CPD policy, if an arrestee is subsequently transferred to

the Cook County Jail the City sends certain types of inventoried personal property with the arrestee to the Jail and retains all other types of inventoried personal property. *Id.* at ¶ 12.[1] Since September 14, 2007, the City's policy has been to destroy any retained personal property of arrestees transferred to the Jail that is not claimed within 30 days of the inventory date. *Id.* at ¶ 23. Each of the plaintiffs had personal property items seized and ultimately destroyed as a result of the City's policies.

Plaintiff Conyers was arrested by City police officers on or about February 26, 2012, while in lawful possession of an earring, a bracelet, and two cell phones. *Id.* at ¶ 30. This property was removed and inventoried by the City, retained by the City upon Conyers' transfer to the Jail, and destroyed by City personnel because it was not claimed within 30 days. *Id.* at ¶ 32. Plaintiff Ewing was arrested by City police officers on or about December 20, 2012, while in lawful possession of a wallet, a debit card, a library card, and two cell phones. *Id.* at ¶ 37. This property was removed and inventoried by the City, retained by the City upon Ewing's transfer to the Jail, and destroyed by City personnel because it was not claimed within 30 days. *Id.* at ¶ 39. Plaintiff Flint was arrested by City police officers on or about January 1, 2013, while in lawful possession of a cell phone and a ring with a small stone. *Id.* at ¶ 44. This property was removed and inventoried by the City, retained by the City upon Flint's transfer to the Jail, and destroyed by City personnel because it was not claimed within 30 days. *Id.* at ¶ 45. All three plaintiffs remained incarcerated in the Jail throughout the 30-day period following their respective arrests. *Id.* at ¶¶ 29, 38, 45.

---

[1] CPD Notice 07-40, as amended by CPD Special Order S06-01-12, provides that the following types of inventoried personal property are sent with arrestees to the Jail: outer garments, U.S. currency of $500 or less, one plain metal ring without stones, government-issued identification cards, prescription eyeglasses, prescription medications, shoelaces, belts, keys, court documents, CPD receipts, credit cards, and debit cards. *Id.* at ¶ 12.

The City provided a written notice to each of the plaintiffs at the time of their arrest (the "Notice") that included the following information:

> You may get inventoried property back by following the procedures detailed below. Information on how to get back inventoried property is also available at www.ChicagoPolice.org. If you have any questions, please contact the CPD Evidence and Recovered Property Section ("ERPS") at (312) 746-6777. ERPS is located at 1011 S. Homan Avenue, Chicago, Illinois 60624 and is open Monday through Friday (8:00 a.m. to 3:00 p.m., closed holidays).
>
> **Property Available for Return to Owner:**
>
> If your receipt is marked "Property Available for Return to Owner" you may get your property back by providing the receipt and a photo ID at ERPS. If you do not contact the CPD to get your property back within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin under Illinois Law, 765 ILCS 1030/1, et seq.
>
> If you are in jail or incarcerated, and your receipt is marked "Property Available for Return to Owner," you may get money returned to you by sending copies of your receipt, your photo ID and the name of the facility where you are jailed or incarcerated to: Chicago Police Department Evidence and Recovered Property Section; 1011 S. Homan Avenue, Chicago, Illinois, 60624. If the property is money, a check will be sent to you at the facility where you are jailed or incarcerated.

Ex. 1 to *Id.* at 14.[2]

Plaintiffs Conyers and Ewing attempted to retrieve their property while incarcerated before learning that it had been destroyed. Conyers "filed a grievance with the Cook County Jail, requested assistance from the jail's social worker, and wrote a letter to [ERPS] seeking return of

---

[2] The City also urges the Court to consider the additional instructions posted on the website listed on the Notice. The Court has declined to take judicial notice of those instructions, however, since even assuming—without deciding—that that the Court may take judicial notice of information on the CPD website, the instructions that are currently posted are not necessarily reflective of the instructions that were posted throughout the entire relevant time period for this lawsuit. *See Information Regarding Personal Property Seized by the Chicago Police Department*, Chicago Police, http://home.chicagopolice.org/wp-content/uploads/2014/12/Information-Regarding-Personal-Property-Seized-By-CPD.pdf (listing an effective date of September 2014).

his personal property." *Id.* at ¶ 31.[3] Ewing "prepared a form authorizing his cousin to [claim his] property" and had his cousin go to ERPS to attempt to retrieve the property before the 30-day period had elapsed. *Id.* at ¶ 38. Flint made no attempt to retrieve his property while incarcerated but eventually learned of its destruction upon his release. *Id.* at ¶ 45.

In dismissing the Third Amended Complaint, *see* Order Dismissing Third Amended Complaint, Dkt. 80, the Court gave plaintiffs specific instructions with respect to repleading and filing a Fourth Amended Complaint. The Court dismissed plaintiffs' Fifth Amendment-based § 1983 claim with prejudice to the extent that it purported to assert a facial challenge to the City's policy, but without prejudice to the extent that it presented an as-applied challenge. Order, Dkt. 80, at 15. However, the Court cautioned that an as-applied Fifth Amendment challenge could not be pursued unless and until Plaintiffs have exhausted all potential remedies under state law. *Id.* at 15. The plaintiffs' Fourteenth Amendment-based § 1983 claim was also dismissed without prejudice for lack of standing. The Court granted the plaintiffs leave to replead that claim within 28 days. *Id.*. The plaintiffs timely filed their Fourth Amended Complaint, and this Motion to Dismiss followed.

## ANALYSIS

The plaintiffs allege that the City is liable under 42 U.S.C. § 1983 because its policies pertaining to the destruction of retained personal property of arrestees transferred to the Jail deprive arrestees of rights secured by the Fifth and Fourteenth Amendments. To state a claim against a municipal entity under § 1983, a plaintiff must allege that a person acting under color

---

[3] These reclamation attempts were made sometime between February 26, 2012, when Conyers was arrested, and July 2012, when he learned that his property had been destroyed. It is unclear, however, whether any of the attempts were made within 30 days of Conyers' arrest. *Id* at ¶¶ 29, 31, 32.

of state law violated a right secured by the Constitution or laws of the United States, and that the violation was caused by a policy or custom of the defendant. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). The City argues that the Complaint (1) does not assert a valid § 1983 claim based on the Fifth Amendment because the plaintiffs have not exhausted state law remedies, and (2) it does not assert a valid §1983 claim based on the Fourteenth Amendment because the plaintiffs have not satisfied the standing requirements of Article III. The City's arguments are addressed in turn below.

**I. Fifth Amendment**

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. The plaintiffs claim that the City's disposal of their property after 30 days without providing adequate notice or opportunity to reclaim it amounts to a deprivation of their property without just compensation. Compl. at ¶ 7. The plaintiffs, however, cannot bring an as-applied Takings Clause challenge in federal court until they have pursued all state law remedies that are available to them.[4] *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985); *Peters v. Vill. of Clifton*, 498 F.3d 727, 731-32 (7th Cir. 2007).[5] The City argues that

---

[4] The City argues that the Court's prior order foreclosed an amendment to the complaint to assert an as-applied takings claim. Def.'s Mot. to Dismiss at 6. Not so. As explained, the Court concluded that the Third Amended Complaint did not even assert an as-applied takings claim, but to the extent that it did, such claim was dismissed without prejudice. This order in no way precluded the plaintiffs from asserting an as-applied claim in the next complaint, so long as the exhaustion requirement was satisfied. As discussed further below, that requirement has not been satisfied and so the as-applied takings claim is again dismissed without prejudice.

[5] Although a plaintiff may raise a facial challenge based on the Takings Clause without first exhausting state law remedies, *see San Remo Hotel, L.P. v. City & Cnty. Of S.F.*, 545 U.S. 323, 345-46 (2005) (citing *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)); *Peters v. Vill. Of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007). As noted, the Court previously dismissed the

plaintiffs have failed to exhaust state law remedies to redress the loss associated with the disposal of their property. Def.'s Mot. to Dismiss at 7. But the plaintiffs maintain that the Illinois Local Government and Governmental Employee Tort Immunity Act, 745 Ill. Comp. Stat. *et seq.*, precludes them from pursuing tort claims against the City in state court, and thus there are no state law remedies available for them to exhaust. There are substantial reasons to doubt the plaintiff's premise, however, and so the Court cannot conclude that the plaintiff has satisfied the exhaustion requirement. In a takings case, "a state violates the constitution only by refusing to pay up." *SGB Financial Services, Inc. v. Consolidated City of Indianapolis-Marion County, Indiana*, 235 F.3d 1036, 1037 (7th Cir. 2000). The plaintiffs have not established that it is inevitable that they will be bounced from state court and so they do not as yet have a ripe takings claim.

The plaintiffs maintain that § 4-103 of the Illinois Local Governmental and Governmental Employee Tort Immunity Act, 745 Ill. Comp. Stat. 10/4-103 (the "Act"), provides the City with immunity from claims involving the sale or destruction of inmate property. Section 4-103 states:

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention, or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

745 Ill. Comp. Stat. 10/4-103. In essence, this provision of the Act creates immunity for public entities and employees for injuries related to the supervision of inmates; it has no obvious application in the context of a case like this one, where the plaintiffs are seeking compensation for property taken from them. *See, e.g., Thomas v. Sheahan*, 499 F. Supp. 2d 1062 (N.D. Ill.

---

plaintiffs' Fifth Amendment claim to the extent that it purported to assert a facial challenge to the City's policies. Order Dismissing Third Am. Comp., ECF No. 80, 8-9, 15.

2007) (county was immune from liability for wrongful death of pretrial detainee who died from meningitis and pneumonia at county jail); *Hayes v. City of Des Plaines*, 182 F.R.D. 546 (N.D. Ill. 1998) (police officers were immune from claims that they were negligent in supervising detainee who committed suicide while left unattended in interview room in police station); *Bollinger v. Schneider*, 381 N.E.2d 849 (Ill. App. Ct. 1978) (county and county sheriff were immune from suit to recover for injuries sustained by minor who was physically and sexually assaulted by other inmates while confined in juvenile section of county jail); *Payne for Hicks v. Churchich*, 161 F.3d 1030 (7th Cir. 1998), *cert. denied* 527 U.S. 1004 (1999) (county and county sheriff were immune from liability for alleged failure to provide proper jail space and to protect detainees against self-inflicted harm).

Although the statute does not indicate that the government is immune from claims for the destruction of inmate property, the plaintiffs point the Court to *Black v. Dart*, 28 N.E.3d 884 (Ill. App. Ct. 2015), as support for their argument that the City would be immune under section 10/4-103 from liability for the alleged takings. In *Black*, the plaintiff claimed, among other things, that the Sheriff failed to return his clothing to him at the time of his release. 28 N.E.3d at 885. The sheriff moved for summary judgment, raising several defenses, including immunity under the Act and the pendency of a similar federal class action suit in *Elizarri v. Sheriff of Cook County*. *Id.* at 886. The plaintiff, however, never responded to the Sheriff's motion despite several opportunities to do so and the trial court granted summary judgment without reaching the substance of the defendant's argument. *Id.* The plaintiff appealed, arguing only that "the trial court's alleged dismissal of his lost clothing claim based on the pendency of *Elizarri* was erroneous." *Id.* at 887. The appellate court affirmed, stating, "[t]he plaintiff failed to assert any challenge to the Sheriff's immunity defense throughout the proceedings below, and concededly

foregoes any such argument on appeal." *Id.* at 888. Thus, the opinion in *Black* was founded primarily on waiver, not on consideration of the immunity issue after developed argument.[6]

Nevertheless, as the plaintiffs note, the Illinois appellate court cited Section 10/4-103 as support for affirming the grant of summary judgment. As Judge Lee has observed in a recent case, however, although *Black* cited Section 10/4-103, its analysis was primarily based not on Section 10/4-103, but on a different immunity provision, namely 745 ILCS § 10/2-201. *See Wilson v. City of Evanston,* No. 14 C 8347, 2016 WL 344533, at *3 (*Black*'s language "tracks the immunity established by § 10/2-201, not § 10/4-103"). Whereas Section 10/4-103 addresses liability for "failure to provide sufficient equipment, personnel, supervision or facilities" at a jail—matters that are not implicated by the plaintiffs' property loss claims—Section 10/2-201 concerns decisions by employees "involving the determination of policy or the exercise of discretion" by individual employees. Here, there is no allegation that the plaintiffs lost their property as the result of discretionary policy determinations, so even that statute seems a poor fit. There is, therefore, reason to question the plaintiff's argument that *Black* stands for the proposition that Section 10/4-103 provides immunity for claims based on the disposal of prisoner property.[7]

There is another relevant distinction between these immunity provisions. Although Section 10/4-103 plainly applies to local public entities, by its terms Section 10/2-201 applies only to public employees. *See S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D.

---

[6] The City's contention that in dismissing the Third Amended Complaint, this Court rejected the plaintiffs' argument concerning *Black* misreads the Court's opinion. The Court expressly noted that it had not considered the arguments about *Black* (because the Court's rulings made it unnecessary to do so). *See* Order Dismissing Third Am. Compl., ECF 80, 13 n.12.

[7] In the Fourth Amended Complaint, the plaintiffs similarly conflate a citation to § 10/4-103 while quoting language from the *Black* opinion. *See* Compl. at ¶ 7. The Court attributes this error to the imprecision reflected in the *Black* opinion rather than to any intentional attempt to misquote § 10/4-103.

Ill. 2010) (charter school not immune under § 4/2-201 because not an employee as defined by the statute); 745 ILCS 10/1-202 (defining "employee" to include "a present or former officer, member of a board, commission or committee, agent, volunteer, servant or employee"). The question is not so clear cut, however. In *Hanley v. City of Chicago*, 795 N.E.2d 808, 814 (Ill. App. 1st Dist. 2003), the Illinois appellate court expressly held that the immunity conferred by Section 2-201 on public employees extends to their municipal employer as well. In support, the appellate court pointed to the Illinois Supreme Court's decision in *In re Flood Litigation,* 680 N.E.2d 265 (Ill. 1997), in which the Court concluded that the city of Chicago was immune from liability for the discretionary acts of its employees under § 2-201. *Id.* at 272-73. Notably, however, in *Flood Litigation,* the state Supreme Court did not address the fact that, by its terms, Section 2-201 applies only to employees, not local public entities. That omission undermines, to some degree, confidence that the Court's answer would be the same if it were presented with an argument based on the statute's "plain language."[8] Though the state Supreme Court applied Section 10/2-201 to the City, it did not address—and therefore did not reject—the proposition that the "plain language" of the provision applies only to employees.

There is, for the same reason, reason to question the City's reliance on the Seventh Circuit precedent. The City points out that the Court of Appeals has repeatedly confirmed that common law suits for conversion and replevin provide adequate post-deprivation remedies for takings claims, and so it has. Indeed, it has done so in the particular context of takings claims by prisoners. *See, e.g., Davenport v. Giliberto*, 566 Fed.Appx. 525, 529 (7th Cir. 2014) (holding that negligent loss of arrestee property does not offend due process and, even if intentional, is not

---

[8] Elsewhere in its opinion, the Illinois Supreme Court confirmed that it is the "plain language" of § 2-201 that governs its interpretation. 680 N.E.2d at 273 (concluding that § 2-201 immunizes willful and wanton misconduct as well as negligence).

actionable under § 1983 because Illinois law provides an adequate post-deprivation remedy – namely, a suit for conversion); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993) (holding that Illinois provides an adequate post-deprivation remedy to prisoner whose property was confiscated and destroyed by prison guards). In none of those cases, however, has the Seventh Circuit had occasion to consider whether Sections 10/4-103 or 10/2-201 render those state law remedies unavailable for purposes of exhaustion. Circuit precedent does not, therefore, resolve the question.

That said, the Seventh Circuit *has* pointed the way out of this particular thicket. As the Court explained in *SGB Financial*, where a state offers a cause of action to seek redress for a taking, a plaintiff is obliged to pursue that cause of action; there is "nothing to litigate under § 1983" until it has been definitively established that the government taker will not pay "just compensation" for property taken. 235 F.3d at 1038; *see also Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985) ("[N]o constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action."). Where there is room for doubt about the prospects of a state remedy, the party must pursue that remedy. *Cf. SKS & Associates, Inc. v. Dart*, 619 F.3d 674, 680 (7th Cir. 2010) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.") (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (reversing lower courts' failure to apply Younger abstention where federal plaintiff had not tried to present its federal constitutional claims to state courts)). That does not mean that the "availability" of a remedy

depends on the likelihood of success, *SGB Financial,* 235 F.3d at 1038, but rather that resort to the state remedy is not excused unless it would clearly be futile.

Here, the prospect that the plaintiffs can obtain just compensation is not illusory because, as discussed above, it is unclear whether the immunity provisions at issue would apply in the context of the plaintiffs' claims, both because there is room to doubt their legal applicability and because immunity is an affirmative defense that must be pled and proved by the City. The outcome of such a defense in this case, or any other, is not a given; the defense, if available, could be waived, forfeited, or defeated on the merits and, as the Seventh Circuit observed in *SGB Financial*, "efforts to predict how state courts will handle a particular [state law claim challenging a taking] are bootless." Rather than asking federal judges to guess how state courts would resolve such suits, the appropriate tack is to let the state courts do so. *Id.* at 1038. In the absence of a "blanket rule . . . that would block all consideration of a claim that [government] action amounts to a taking," *id.* at 1039, that is what the exhaustion doctrine requires. Illinois has no such blanket rule and, accordingly, the plaintiffs must pursue their takings claim in state court. Only if that effort proves unsuccessful will they be able to pursue a takings claim under Section 1983.[9] *Daniels v. Area Plan Comm'n of Allen Cty.*, 306 F.3d 445, 456 (7th Cir. 2002) ("After utilizing a state remedy, such as a suit for inverse condemnation, if the owner does not receive what he believes is just compensation, he may proceed with a Takings Clause claim in federal court.").

**II. Fourteenth Amendment**

---

[9] It should be noted as well that exhaustion applies to appellate remedies as well. *See Rockstead v. City of Crystal Lake,* 486 F.3d 963, 965 (7th Cir. 2007) (takings claimant "must exhaust his state judicial remedies, if necessary by appealing an adverse decision").

In the Third Amended Complaint, the due process claim asserted by the plaintiffs was that the notice provided to them by the City was misleading, as it suggested by reference to state forfeiture procedures that the plaintiffs had more than 30 days to recover their property. *See*, *e.g.*, Third Am. Compl., ECF No. 59, ¶¶ 16-20. That theory failed because the plaintiffs lacked standing to assert that claim because they failed to allege that they had even read, much less relied on, the purportedly confusing notice. Their failure to timely seek the return of their property could not have been "fairly traceable" to a misleading notice that the plaintiffs never read.

In the Fourth Amended Complaint, however, the plaintiffs have changed their due process theory.[10] They now contend that because the Notice provided by the City fails to identify any procedure for an incarcerated arrestee to secure the return of non-monetary property, and because the City failed to provide plaintiffs with individualized notice or a hearing regarding the destruction of their property, they have been deprived of due process of law in violation of the Fourteenth Amendment. *See* Fourth Am. Compl., ECF No. 81, at 6-7.

Notwithstanding this change in theories, the City continues to fight the last war, maintaining that the plaintiffs have still failed to allege Article III standing adequately. The City argues that the plaintiff's theory continues to be that they were misled by the notice provided. Def.'s Mot. for Summ. J., at 9-10. That is an unreasonable interpretation of the plaintiff's claim, however (notwithstanding a single use of the term "misleading" by the plaintiffs). Whether the plaintiffs were misled by the notice provided to them is no longer germane; their argument now is that the City provided an inadequate procedure to individuals who remained in custody to

---

[10] The defendants' argument that the plaintiffs violated the Court's prior order by filing an amended complaint that changed their theory is baseless. The Court granted leave for the plaintiffs to replead their due process claim, which was dismissed due to lack of jurisdiction. The Court imposed no restrictions on the plaintiffs with respect to repleading that claim.

obtain the return of their personal property. In the context of this claim, the plaintiffs need not establish that they relied on the notice provided because it provided nothing on which to rely; as the plaintiffs see it, it is as if the City had provided no notice at all. The gravamen of the complaint now is not that the plaintiffs were misled into believing that they had a longer period in which to claim their property, but that they were never provided notice that they could reclaim their property (all of which was non-monetary). There is no deficiency in the plaintiffs' standing to assert this claim.

So, we move on to consider the due process claim. Due process does not require individualized notice of state law remedies that are set forth in materials generally available to the public. *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999) (noting that no individualized notice of state-law remedies is required when those remedies are available to the public via statutes and case law); *Gates v. City of Chicago*, 623 F.3d 389, 398 (7th Cir. 2010).[11] Notice of procedures that are not generally available, however, is required. *See Gates*, 623 F.3d at 398. As the City correctly notes, the Court in *West Covina* held that individualized, particularized notice of state procedures for obtaining the return of property seized is not required when those procedures are established by "published, generally available state statutes and case law." *City of W. Covina*, 525 U.S. at 241. That is because "[o]nce the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial

---

[11] The plaintiffs' argument that the City has no right to take possession of their personal property following an arrest, and thus making this case distinguishable from *West Covina*, is unpersuasive. As the City points out, Section 720.25(h) of the Illinois Administrative Code states that "The Chief of police shall determine what personal property, if any, a detainee may retain." Defs.' Reply at 6. Further undermining the plaintiffs' argument is that the same provision goes on to state return of an inmate's property is only required upon "release," which includes "parole, mandatory supervised release, discharge[], or pardon[]." Ill. Admin. Code, Title 20 § 470.20. Of course, this makes sense because an arrestee who is in custody has no right while in custody to retain with them the personal property that was in their possession at the time of arrest.

procedures available to him. The City need not take additional steps to inform him of those options." *Id.*

By contrast, in *Gates* the Seventh Circuit held that when those remedial procedures are dictated by an internal, non-publicly available procedure the City must provide individual notice to the property owner. 623 F.3d at 398. In that case, much like here, at issue was the procedure Chicago police officers followed when seizing property from arrestees—in that case, cash. *Id.* at 391-92. When the plaintiff arrestees had property seized upon intake they were issued a general written notice that indicated they would receive "official notification that [their] inventoried property is available for release," and were instructed that once they received that notice they had thirty days to pick up their property before it was disposed. *Id.* But the plaintiffs never received "official notification" that their property was available for release. *Id.* That was because upon release, in non-narcotic cases, an internal City procedure required arrestees to bring their inventory slip to the desk sergeant who would then connect the arrestee with the arresting officer. *Id.* at 397. Only after the arresting officer certified that the property no longer had an investigative purpose could the funds be released. *Id.* Because the notice that the City provided did not describe these procedures, the plaintiffs were left waiting for an "official notification" that would never come. In effect, much like the plaintiffs here, the inmates were not given inadequate notice—they were in fact given no notice at all. In finding *West Covina* distinguishable, the Seventh Circuit noted that while *West Covina* controls "as to the procedures set forth in state statutes, [but] it does not control as the City's additional difficult-to-access police department rules" that were not readily available to the public. *Id.* at 399.

Here, too, the City's procedures for recovering inmate property were controlled by an internal City procedure and not by a state statute readily available to the public. As in *Gates*,

*West Convina* is therefore inapposite. The question that remains is whether the City provided notice of that procedure to the point of satisfying due process. As the Court explained in its prior opinion, the notice provided to incarcerated individuals did not explain how to obtain the return of non-monetary personal property so, standing alone, it is insufficient. In response, the City indicates they provided information on how to recover seized inmate property on the Chicago Police Department website. Though there is reason to doubt that the information available on the web was readily available to detainees, ultimately that is a factual matter disputed by the parties. For the Court's purposes here, it is enough to say that the plaintiffs have adequately alleged that the notice provided by the City here was not "published, generally available state statutes and case law." *City of W. Covina*, 525 U.S. at 241. Accordingly, the motion to dismiss the due process claim must be denied on that basis alone.[12]

\* \* \*

For the reasons set forth, the plaintiffs' as-applied takings claim is dismissed. That dismissal is without prejudice, but the claim may not be presented again in any federal court until the plaintiffs have exhausted potential state court remedies. The plaintiffs' due process claim may go forward.

Date: February 10, 2016

John J. Tharp, Jr.
United States District Judge

---

[12] Accordingly, the Court need not address the plaintiffs' argument that the City's procedure for reclaiming property is deficient because it does not afford either a pre- or post-deprivation hearing prior to disposal of the property. At this juncture, the content of the City's policy is disputed, so the question of the adequacy of the procedures it defines remains open.