IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLAKE CONYERS, LAMAR EWING, and KEVIN FLINT, individually and for a class, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12 CV 06144 |
| CITY OF CHICAGO, | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Blake Conyers, Lamar Ewing, and Kevin Flint seek class certification in the suit they bring against the City of Chicago (the "City") pursuant to 42 U.S.C. § 1983. Now proceeding on their Fourth Amended Complaint ("Complaint"), the plaintiffs allege that the City violated their Fourteenth Amendment due process rights in connection with its policies regarding the sale or destruction of personal property items seized from arrestees. For the reasons stated below, the plaintiffs' motion for class certification is granted.

**BACKROUND**

The Seventh Circuit has instructed that district courts "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Still, on issues that affect the class certification analysis, "a court may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Id.* (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Although it is the plaintiffs' burden to show that their proposed class satisfies the requirements of Federal Rule of Civil Procedure 23, they

need not do so "to a degree of absolute certainty;" rather, "[i]t is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Id.* The facts summarized below are largely undisputed, though in some cases the proponent of certain facts is noted.

When the Chicago Police Department ("CPD") arrests an individual and takes him or her into custody, it also removes from that person and inventories certain items of personal property. *See* Complaint ¶ 4, ECF No. 81; Opp'n to Mot. to Certify Class ("Opp'n") at 2, ECF No. 125. According to the City, this personal property is inventoried at the time of arrest and recorded on a CPD form known as CPD-34.523, a copy of which—known as "Copy 4"—is provided to the arrestee and serves as the official "receipt" for the property. *See* Opp'n at 2. CPD Department Notices promulgated in 2007 and 2009 set out the City's explicit policy that for arrestees who were transferred to the custody of the Cook County Sherriff, the City would retain possession of all of the arrestee's property except for outer garments and items falling into nine enumerated categories: U.S. currency totaling less than $500, one plain metal ring without stones, government-issued identification cards, prescription eyeglasses, prescription medications, shoelaces and belts, keys, court documents and CPD "eTrack receipts," and credit and debit cards. *See* Complaint ¶¶ 12, 14; Answer ¶¶ 12, 14.

Since September of 2011, the City's explicit policy has also been to provide a written "Notice to Property Owner or Claimant" ("Notice") to each arrestee whose property the CPD retained. *See* Complaint ¶ 15; Answer ¶ 15, ECF No. 99. The Notice that the City provided through September 2014 set forth the following information about obtaining "Property Available for Return to Owner:"

> If your receipt is marked "Property Available for Return to Owner" you may get your property back by providing the receipt and a photo ID at [the Evidence and Recovered Property Section, or "ERPS"]. If you do not contact the CPD to get your property back

> within 30 days of the date on this receipt, it will be considered abandoned under Chicago Municipal Code Section 2-84-160, and the forfeiture process will begin under Illinois Law, 765 ILCS\ 1030/1, et seq.
>
> If you are in jail or incarcerated, and your receipt is marked "Property Available for Return to Owner," you may get money returned to you by sending copies of your receipt, your photo ID and the name of the facility where you are jailed or incarcerated to: Chicago Police Department Evidence and Recovered Property Section; 1011 S. Homan Avenue, Chicago, Illinois, 60624. If the property is money, a check will be sent to you at the facility where you are jailed or incarcerated.

Complaint ¶ 16; Answer ¶ 16. The Notice that the CPD provided to arrestees between September 2011 and September 2014 also stated that "[i]nformation on how to get back inventoried property is also available at www.ChicagoPolice.org." Complaint ¶ 19; Answer ¶ 19. The Copy 4 of Form CPD-34.523, which the City attached to its brief opposing the motion to certify the class—and which the plaintiffs do not discuss in their Fourth Amended Complaint, Motion, or Reply brief—referred to that same website, and included the following language:

<u>Notice to Property Owner or Claimant</u>

> This Property Inventory form is your receipt for property inventoried by the Chicago Police Department ("CPD"). When you received this receipt, you should have also received a form entitled NOTICE TO PROPERTY OWNER OR CLAIMANT (the "Notice") explaining how you may get back inventoried property. If you did not receive the Notice, return to the CPD facility where your property was inventoried and ask Desk Personnel for the Notice. A complete copy of the Notice is also available at www.ChicagoPolice.org[.] If you have further questions, please contact the CPD Evidence and Recovered Property Section at 312-746-6777.

Sample Copy 4, ECF No. 125-1; *see also* Opp'n at 2-3.

Notably, neither Copy 4 nor the Notice explains how an arrestee who remains in custody for more than 30 days is to obtain the return of personal property other than cash. The plaintiffs

3

allege that people who are detained at the Cook County Jail have not been allowed Internet access, and that as a result, any information at www.ChicagoPolice.org on how to retrieve inventoried property "is neither published nor generally available" to those detainees. Complaint ¶¶ 20-21. The City denies that any such online information is not available to arrestees. Answer ¶ 21. In this lawsuit, the plaintiffs allege that the City has deprived them and others similarly situated of their property without the due process guaranteed by the Fourteenth Amendment. Complaint ¶ 27. The alleged basis for these violations is that there was no adequate procedure to reclaim their non-monetary property, they were not provided with individualized notice of any adequate procedure to reclaim such property, they were not afforded a hearing before their property was sold at auction or destroyed, and they were not afforded a hearing after their property had been sold or destroyed. *Id.*

The CPD arrested plaintiff Blake Conyers on February 26, 2012, and transferred him to the custody of the Cook County Sheriff. Complaint ¶ 29; Answer ¶ 29. The plaintiffs allege that when he was arrested, Conyers was in lawful possession of an earring, a platinum and diamond bracelet, and two cell phones, all of which the City inventoried and retained. Compl. ¶ 30. Conyers wrote a letter to the City's ERPS seeking the return of his property, and also alleges that he filed a grievance with the Cook County Jail and asked the jail's social worker for help in recovering his property. Fourth Am. Compl. ¶ 31; Answer to Fourth Am. Compl. ¶ 31. In a July 20, 2012 letter, a captain from the ERPS told Conyers that his property "had been destroyed since it was not claimed within 30 days from the date inventory." [sic] Fourth Am. Compl. ¶ 32; Answer to Fourth Am. Compl. ¶ 32.

Plaintiff Lamar Ewing, meanwhile, was arrested by CPD members on December 20, 2012, and was also transferred to the custody of the Cook County Sheriff. Fourth Am. Compl.

4

¶ 36; Answer to Fourth Am. Compl. ¶ 36. Ewing says that when he was arrested, he possessed a brown wallet, a Link card, a Chicago Library card, and two cell phones, all of which the City inventoried and retained. Fourth Am. Compl. ¶ 37. The plaintiffs allege that in January 2013, Ewing—who was still incarcerated at the Cook County Jail—prepared a form authorizing his cousin to pick up his belongings, but that when the cousin went to ERPS, he was not able to retrieve Ewing's personal property. Fourth Am. Compl. ¶ 38. In February 2013, Ewing's personal property was destroyed. *Id.* ¶ 39. Finally, the third named plaintiff, Kevin Flint, was arrested by CPD members on January 1, 2013, and was similarly transferred to the Cook County Sheriff's custody. *Id.* ¶ 43. Flint alleges that at the time, he was in possession of a ring with a small stone, as well as a cell phone, both of which the City inventoried and retained. *Id.* ¶ 44. The complaint alleges that Flint was housed in the Cook County Jail until May 2013, and that he learned upon his release that the CPD had destroyed his cell phone and his ring. *Id.* ¶ 45.

Conyers, Ewing, and Flint all testified in depositions in this case that they did not receive either a Notice or a Copy 4 of Form CPD-34.523 after they were arrested on the dates set forth in the Fourth Amended Complaint. *See* Flint Dep. 22:18-22, July 27, 2000; Ewing Dep. 18:14–19:6, Aug. 22, 2016; Conyers Dep. 10:5-16, 13:6-10, Oct. 21, 2016; *see also* Opp'n at 5-6, 8. The plaintiffs had all been arrested on prior occasions as well, and Ewing and Flint testified that in connection with at least some of those prior arrests, they did not take any steps to try to recover property that the CPD had inventoried on those occasions. *See* Flint Dep. 55:18–56:20, 63:22–64:3, 64:24–65:2; Ewing Dep. 47:14-19, 48:9–49:4; Conyers Dep. 11:22–12:1; *see also* Opp'n at 5-7.

The three named plaintiffs lodged their Fourth Amended Complaint in this case in April 2015. In February 2016, this Court partially granted the City's motion to dismiss that pleading,

5

finding that the plaintiffs had failed to state a Fifth Amendment claim but allowing them to go forward on the procedural due process claim they bring under the Fourteenth Amendment. *See* Feb. 2016 Op., ECF No. 95. Conyers, Ewing, and Flint now seek an order certifying a class that they define as follows:

> All persons who, following an arrest, had property inventoried as "available for return to Owner" by the Chicago Police Department from December 1, 2011 to December 31, 2013, who were then held in custody for more than 30 days and whose property was destroyed or sold by the Chicago Police Department.

Mot. to Certify Class at 1, ECF No. 114. For the reasons set forth below, the motion is granted.

## ANALYSIS

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner*, 669 F.3d at 811 (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)). Rule 23(a) requires that a proposed class satisfy the requirements of numerosity, typicality, commonality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). The plaintiffs here are seeking certification under Rule 23(b)(3), which requires them to also show: "(1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811; *see also* Fed. R. Civ. P. 23(b)(3).

**I. Preliminary Issues**

The City argues in its brief that this Court need not even reach the question of whether the plaintiffs have satisfied these Rule 23 requirements—though the City argues they have not—because the plaintiffs admit that they did not receive the Notice and therefore cannot assert the *Monell* theory of liability on which the Fourth Amended Complaint is based. *See* Opp'n at 11-12.

In particular, the City asserts that the "central question" in the lawsuit—which it argues has been the same for some four years— is "whether Plaintiffs can assert *Monell* liability against the City based on alleged deficiencies associated with the Notice," and that because Conyers, Ewing, and Flint all say they never received they Notice, their injuries are distinct from those alleged in the complaint. Opp'n at 11. But the City has once again misconstrued the nature of the plaintiffs' claim. As the plaintiffs point out in their Reply, this Court previously corrected the City's reading of the plaintiffs' current theory when it rejected the City's argument that the plaintiffs lacked standing:

> The City argues that the plaintiff's theory continues to be that they were misled by the notice provided. . . . That is an unreasonable interpretation of the plaintiff's claim, however (notwithstanding a single use of the term "misleading" by the plaintiffs). Whether the plaintiffs were misled by the notice provided to them is no longer germane; their argument now is that the City provided an inadequate procedure to individuals who remained in custody to obtain the return of their personal property. In the context of this claim, ***the plaintiffs need not establish that they relied on the notice provided because it provided nothing on which to rely***; as the plaintiffs see it, it is as if the City had provided no notice at all. The gravamen of the complaint now is not that the plaintiffs were misled into believing that they had a longer period in which to claim their property, ***but that they were never provided notice that they could reclaim their property*** (all of which was non-monetary).

Feb. 2016 Op. at 12-13 (emphasis added). The "central question" of the suit, therefore, is not whether the plaintiffs can assert *Monell* liability because the City misled them, but whether the City gave them any information at all about how to retrieve non-cash property. As to that question, that the three named plaintiffs testified that they did not receive that Notice in connection with the arrests at issue has no bearing on their class certification bid.[1]

---

[1] This is not to say that whether the plaintiffs read the information that the City did provide is not relevant to their individual claims. If the question of the adequacy of the notice is

7

The City's additional *Monell*-based arguments also miss the mark. The City asserts that the named plaintiffs cannot pursue a *Monell* theory because they "concede" that any failure by the City to provide the Notice upon their arrest would have been a random act in violation of the City's explicit policy that the Notice be provided, meaning *Monell* liability does not apply. Opp'n at 12. But again, the plaintiffs have alleged that the City failed to provide them with sufficient notice regarding how to retrieve their property, and that this was the case whether an arrestee received the Copy 4 and/or the Notice—pursuant to the City's explicit policy—or not. Whether the plaintiffs will ultimately succeed on such a theory is a question for another day; this Court has already declined to dismiss the plaintiffs' due process claim at the pleading stage and made clear that they need not show they relied on the Notice, which they admittedly never received, to succeed on their claim.

The City next argues that the proposed class members are neither identifiable nor ascertainable because the class definition relies on "subjective criteria" in that it "presumes that each class member had an interest in reacquiring his or her personal property." Opp'n at 13. The City asserts that identifying class members would therefore require this Court to engage in a time-consuming analysis for each arrestee to determine whether that individual really wanted his or her property back and made some affirmative effort to recover it. *Id.* at 14. That is wrong for at least two reasons. First, the proposed class definition does not include that subjective element; the proposed class membership criteria are entirely objective. The plaintiffs seek to represent a class of persons who were arrested, whose property was inventoried by CPD within a defined

---

resolved in the plaintiffs' favor (*i.e.*, if the notice is found to be constitutionally inadequate), the question of whether the plaintiffs bothered to review the information that was provided would be relevant to whether the lack of damages could have caused any actual damages. But, as noted *infra* at 9, proof of damages is not required to establish a due process violation, and the plaintiffs would be entitled to an award of nominal damages regardless.

8

time period, who spent more than 30 days in custody, and whose property CPD sold or destroyed. These are all objective criteria and that is all that the implicit requirement of "ascertainability" demands. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015) (rejecting "heightened" conception of ascertainability that would move "beyond examining the adequacy of the class definition itself to examine the potential difficulty of identifying particular members of the class and evaluating the validity of claims they might eventually submit"). And even if the administrative feasibility of identifying class members were relevant to the concept of ascertainability, it would not pose an obstacle here, where it is undisputed that the City's own records identify the arrestees—including by name and address—whose property was seized, marked as "available for return to Owner, and later destroyed or sold during the class period. *See* Mot. to Certify Class at 4-5; Mot. Ex. 2. The City also does not dispute that its own records reflect which of these arrestees spent more than 30 days in custody, or that the same information regarding length of custody can be gleaned from records maintained by the Cook County Sheriff. *See* Mot. to Certify Class at 5.

Second, as the plaintiffs observe in reply, liability for failing to provide notice does not turn on an individual's subjective intent or on whether the violation actually caused any damages. Even if putative class members suffered no actual injury resulting from inadequate notice (because, for example, they did not read the notice they did receive), they would be entitled to nominal damages because "the right to procedural due process is 'absolute,'" *Carey v. Piphus*, 435 U.S. 247, 266 (1978), even when the violation is "not shown to have caused actual injury," *id. See also, e.g., Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("nominal damages are not compensation for loss or injury, but rather recognition of a violation of rights").

To the extent that subjective intent has any relevance, therefore, it is to the issue of damages. And the Seventh Circuit has repeatedly held that the need for individualized damages determinations does not defeat class certification. *See, e.g., McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875-76 (7th Cir. 2015); *Mullins,* 795 F.3d at 671; *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 800 (7th Cir.2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.").

The proposed class definition here is also easily distinguished from that in *Haynes v. Dart*, No. 08 C 4834, 2009 WL 2355393 (N.D. Ill. July 29, 2009), to which the City makes its most developed comparison. *See* Opp'n at 14. In *Haynes*, the district court denied a motion to certify a class of all "current, former, and future pretrial detainees housed at Cook County Jail suffering from mental illnesses who [had] been deprived of necessary mental health treatment" during the class period. *Haynes*, 2009 WL 2355393, at *3. As the district court found in *Haynes*, "suffering from mental illnesses" was a criterion too vague to define an ascertainable class, in part because that phrase raised "basic questions as to how 'mental illness' is to be defined and how it is to be diagnosed." *Id.* at *3-4. The court also pointed to the *Haynes* plaintiffs' own allegations that the defendants were "intentionally failing to identify mentally ill inmates by using inappropriate screening criteria," meaning that many potential class members had never received a mental illness diagnosis for the jail. *Id.* at *4. As a result, that court had "no assurance" that it would be able to identify class members without relying on time-consuming individual inquires. *Id.*

Here, by contrast, there is no vagueness to any aspect of the proposed class definition, and the objective requirements for class membership have already been determined and recorded by the City or the Cook County Sheriff. This Court will not need to embark on individual analyses, for example, of whether each class member spent more than 30 days in custody—much less interpret what that objective requirement means—because the City does not dispute that this information is readily available. Moreover, the City's argument that some of the proposed class members that the plaintiffs identify—and whose unsworn declarations they submitted with their motion—cannot join the class because they were arrested on dates falling outside the class period actually demonstrates that the proposed class *is* ascertainable. *See* Opp'n at 15-17. Individuals who do not satisfy the class definition can be excluded from the action on the basis of such objective criteria as the date their property was inventoried upon their arrest, as the City itself—albeit unintentionally—demonstrates.

Finally, the City also complains that the proposed class definition does not expressly refer to the notice (either the Copy 4 or the Notice) the City provided. But the dispute here is not that during the class period some arrestees received a form of notice that was adequate while others received notice in some other form that was not; it is clear that the question of adequacy of notice will turn on whether the information provided by the Copy 4 and the Notice, and the availability of online information, was sufficient to apprise arrestees of what they had to do to get their property back. It is undisputed, then, that anyone who qualifies as a member of the class, as defined, received no other notice than that provided by Copy 4 and the additional Notice; adding reference to those forms would not change the contours of the class and modifying the class definition on that basis is therefore unnecessary.

**II. Rule 23(a) Requirements**

Rule 23(a) requires that a proposed class satisfy the requirements of numerosity, typicality, commonality, and adequacy of representation. The City does not challenge the plaintiffs' satisfaction of the numerosity and representation requirements, and indeed this Court finds them to be satisfied here. The plaintiffs have also satisfied Rule 23(a)'s typicality and commonalty requirements, despite the City's arguments to the contrary.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and in arguing that the plaintiffs cannot satisfy this requirement, the City relies once again on its argument that the plaintiffs cannot assert *Monell* liability because they did not receive copies of the Notice upon their arrest. *See* Fed. R. Civ. P. 23(a)(2); Opp'n at 15-16. The City argues that the plaintiffs therefore have not experienced the "explicit policy" or "standardized conduct" alleged in the Fourth Amended Complaint, and so "there is no common policy or conduct that connects or unites" the proposed class members. Opp'n at 16. This argument fails for the same reasons as the City's other *Monell*-related arguments; it ignores this Court's prior finding that receipt of the Notice—as opposed to the adequacy of the content of the notice—is no longer central to the plaintiffs' claims. As the court's previous opinion in this case noted, "[t]he question that remains is whether the City provided notice of [its] procedure to the point of satisfying due process." Feb. 2016 Op. at 15. The plaintiffs' class claim does not turn on whether the City gave them Copy 4 or the Notice; it turns on whether Copy 4 and the Notice provided sufficient information about the process required to obtain the return of non-cash property taken from them at the time of their arrest. If the City failed to provide adequate notice to arrestees about the process by which to secure the return of non-cash property, then whether a particular class member received defective notice is irrelevant because that defective notice would not have

provided an adequate explanation of the required process. The common claim among the class members is that the notice provided by the City was inadequate, not that they did not receive something from the City purporting to be notice. The plaintiffs have therefore sufficiently asserted "a common contention" that is "of such a nature that it is capable of classwide resolution." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The City's argument that the plaintiffs fail to satisfy Rule 23(a)(3)'s requirement that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class" fails for the same reason. The Seventh Circuit has described the typicality analysis in this way:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Arreola*, 546 F.3d at 798 (quoting *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). The City again points to the purported significance of the fact that the three named plaintiffs did not receive the Notice or a Copy 4 of Form 34.523 in connection with their inventoried property, saying that their testimony to this effect "departs from" the Fourth Amended Complaint's allegations regarding the City's explicit policy of providing those documents to arrestees. *See* Opp'n at 16-17. As explained previously in this Opinion, that line of reasoning miscasts the plaintiffs' due process claim, which in its current iteration does not turn on receipt of the Notice.

The plaintiffs have satisfied the typicality requirement. Conyers, Ewing, and Flint all had property inventoried as "available for return to Owner" within the class period, following their arrest; each of those three plaintiffs was held for more than 30 days; and the CPD destroyed each of their inventoried property. These facts, which the City does not dispute, fall in line with the

13

due process allegations the plaintiffs are pursuing in their Fourth Amended Complaint. The declarations from the eight proposed class members who were arrested within the class period also indicate that the plaintiffs' claims are typical of the claims of the class. Though the City correctly notes that some of those declarations actually request the return of their property or otherwise indicate that the arrestee did not know whether the property had been sold or destroyed—for example, one declaration states "I have no idea what happened to my property," *see* Mot. Ex. 3—this does not make the claims of those who fall within the class definition inconsistent with the named plaintiffs' claims. This Court has already found that the class members are identifiable and ascertainable because the names and addresses of arrestees whose property was sold or destroyed, and who otherwise meet the class definition requirements, are recorded. The plaintiffs' claims thus arise "from the same event or practice or course of conduct" as the proposed class members, *see Arreola*, 546 F.3d at 798, and Rule 23(a)'s typicality requirement is satisfied.

## II. Rule 23(b)(3) Requirements

Finally, the plaintiffs are seeking certification pursuant to Rule 23(b)(3), and so must satisfy that Rule's predominance and superiority requirements. *See* Fed. R. Civ. P. 23(b)(3). The City makes no direct arguments regarding superiority, but says that the plaintiffs have not adequately shown that "the questions of law or fact common to class members predominate over any questions affecting only individual members." *See id.* "There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. This requirement is similar to Rule 23(a)'s requirements for commonality and typicality, but the Supreme Court has made clear that "the predominance criterion is far more demanding." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997); *see also Messner*, 669 F.3d at 814 (quoting same).

Predominance may be satisfied where "a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner*, 669 F.3d at 815 (quoting *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)). If making a prima facie showing on their claim requires proposed class members to "present evidence that varies from member to member, then it is an individual question," but "[i]f the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)) (internal quotations omitted). Individual questions may well be present; the requirement is only "that those questions not predominate over the common questions affecting the class as a whole." *Id.*

Resorting to hyperbole, the City argues that there are "an astounding number" of individual questions at issue in this case. Opp'n at 19. Most, however, are variations on the same theme, which the Court has already rejected—namely, that it matters whether the class member claims to have received or relied upon what notice the City did provide. Relatedly, the City also argues that the plaintiffs have not offered any objective method for "identifying or excising" individuals who voluntarily abandoned their personal property during previous arrests, *see id.*, and that the Court would have to make individual inquiries regarding whether class members took some affirmative step or expressed some desire to recover their personal property within thirty days. *Id.* But why? As discussed above, an arrestee's subjective intent does not bear on the question of whether the notice provided by the City was constitutionally adequate. The City cannot dodge liability for providing inadequate notice of the process required to obtain the return of property by pointing to evidence that many arrestees made no attempt to do so; that would be akin to rewarding the metaphorical orphans for killing their parents. Given that neither Copy 4 nor the Notice addresses the return of non-cash property, it would not be surprising, or relevant,

to learn that many arrestees did not take timely action to prevent the City from destroying the property that it had seized upon their arrests. How could they, if the City did not tell them how?

Another individual issue, the City says, is whether class members who were arrested during the class period successfully recovered their property such that, according to the City, those arrestees should be barred from asserting a claim for that arrest or others within the class period, as they would have clearly had notice of the process for recovering such property. *Id.* at 20. This argument also falls short. To begin, such persons are excluded from the proposed class definition, unless they were subsequently arrested again and had personal property seized and destroyed by the City. And even for that presumably small subset of the proposed class, managing to obtain the return of property following some prior arrest says little—nothing, really—about whether the City provided adequate notice of the procedure required to do so. The same holds true as to whether a class member voluntarily abandoned his or her property on some prior occasion; that fact (assuming *arguendo* that it could be established) would have no bearing on whether the City satisfied due process requirements during the period at issue in this case. That Plaintiff Ewing, for example, testified in his deposition that he did not make efforts to retrieve his personal property in 1982 in connection with an arrest—testimony that the City excerpts in its Opposition brief—has no bearing on whether he received adequate notice about how to retrieve property that was inventoried after a separate arrest some three decades later. *See* Opp'n at 7; Ewing Dep. at 48:9–49:4.

These "individual" questions about intent really go to whether arrestees valued their property highly enough to seek its return. The City characterizes that question as a critical individual inquiry necessary to assess the City's potential liability, but as noted above its relevance is to the question of damages, not liability. If an arrestee assigned so little value to his

property that he had no interest in securing its return, even had he known how to do so, then his claim for damages will be miniscule, but that is an assessment to be made after liability is determined. Again, "[i]t is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815 (citing *Wal–Mart*, 564 U.S. at 362 (2011); *Arreola*, 546 F.3d at 801; *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994). Any individual inquiry in this regard, therefore, will not stand in the way of the plaintiffs' pursuit of class certification. The plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

Finally, that rule's requirement that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy" is also satisfied here, though as previously noted, the City does not challenge superiority. The central question here is the adequacy of the notice provided to arrestee's during the class period; it plainly makes more sense to adjudicate that common question on a class-wide basis than by means of individual claims. Further, the plaintiffs assert that only "a small amount of damages" would be available to each individual class member, so a class action represents the only realistic means of recovery for many potential claimants. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014) ("The district court might conclude on remand that the class device is superior, because no rational individual plaintiff would be willing to bear the costs of this lawsuit."). "If there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

* * *

For the foregoing reasons, the plaintiffs' motion for class certification is granted. The named plaintiffs may represent the following class:

> All persons who, following an arrest, had property inventoried as "available for return to Owner" by the Chicago Police Department from December 1, 2011 to December 31, 2013, who were then held in custody for more than 30 days and whose property was destroyed or sold by the Chicago Police Department.

A status hearing is set for Thursday, October 12, 2017 at 9:00 a.m.

Date: September 28, 2017

John J. Tharp, Jr.
United States District Judge