IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Blake Conyers, Lamar Ewing, and )
Kevin Flint, individually and for a )
class, )
                                  )
              *Plaintiffs*, )
                                  ) No. 12-cv-6144
               -vs- )
                                  )
City of Chicago, ) *(Judge Tharp)*
                                  )
              *Defendant*. )

## REPLY IN SUPPORT OF MOTION TO RECONSIDER

The parties agree, as this Court recognized in *Dyson v. City of Calumet City*, No. 16 CV 11509, 2019 WL 3934937, at *5 N.6 (N.D. Ill. Aug. 20, 2019), that *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162 (2019), means that "a plaintiff can now seek redress for a Fifth Amendment Takings violation under 42 U.S.C. § 1983 once the government has taken his property." (ECF No. 207 at 1, citing *Knick*, 139 S.Ct. at 2168.) The parties also agree that defendant has taken property belonging to members of the plaintiff class without the "just compensation" required by the Fifth Amendment. (ECF No. 207 at 4.)

Defendant argues, however, that the Court should not reconsider that portion of its order of February 10, 2016 (ECF No. 95 at 5-11) dismissing plaintiffs' Fifth Amendment Takings claim because the taking was "in

connection with the City's execution of its law enforcement police powers." (ECF No. 207 at 4.) The Court should reject this argument because defendant's sale or destruction of arrestee property has nothing to do with police powers.

## I. Chicago's Police Powers Do Not Allow It to Sell or Destroy Arrestee Property

Defendant seizes and inventories arrestee property pursuant to a written policy. (Plaintiffs' Rule 56.1 Statement, ECF No. 182 at 2, ¶ 3.) Plaintiffs do not dispute that the power to seize and inventory arrestee property is within a municipality's police powers. The Supreme Court has squarely held that a municipality may "remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." *Illinois v. Lafayette,* 462 U.S. 640, 645 (1983). The same is not true for selling or destroying arrestee property while the arrestee remains in custody awaiting trial: such a practice is not a valid exercise of police powers because it fails to "promote the public convenience or the general prosperity … [nor does it] promote the public health, the public morals or the public safety." *Chicago B & Q Ry. Co. v. Illinois ex rel. Grimwood*, 200 U.S. 561, 592-93 (1906).

Defendant will retain an arrestee's property other than outer garments and items falling into one of nine categories.[1] (Plaintiffs' Rule 56.1 Statement, ECF No. 182 at 2-3, ¶ 5.) Defendant started to hold onto this property in 2007 when the Cook County Jail began to refuse to accept such "non-compliant" property. (ECF No. 182 at 60, Testimony of Michael Mealer, *Elizarri v. Sheriff*, 07-cv-2427, Tr. 1194:20-24.) Defendant is unable to show that its decision to retain "non-compliant" property, such as cell phones or jewelry, is a valid exercise of its police powers. Nor can defendant show that selling or destroying this property is a valid exercise of police powers.

Illinois law requires defendant to return to the arrestee all of his (or her) property when the arrestee is released, discharged, or transferred to the custody of the Sheriff of Cook County. Title 20, Illinois Administrative Code, Section 720.25(h) provides as follows:

> h) **Personal Property**
>
> The Chief of Police shall determine what personal property, if any, a detainee may retain. Receipts must be issued for all personal property taken from a detainee. Personal property, except for items confiscated as evidence, shall be returned to

---

[1] (1) United States currency of $500 or less; (2) One plain metal ring without stones. No other jewelry will be accepted; (3) Government-issued identification cards; (4) Credit/Debit cards; (5) Prescription eyeglasses; (6) Prescription medications and Medical Alert Bracelets; (7) Shoelaces and belts; (8) Keys; and (9) Court documents and "eTrack" receipts. (Plaintiffs' Rule 56.1 Statement, ECF No. 182 at 2-3, ¶ 5.)

the detainee or his or her designee upon release and such return shall be documented.

The Illinois Administrative Code has "the force and effect of law." *Union Elec. Co. v. Department of Revenue*, 136 Ill.2d 385, 391, 556 N.E2d 236, 239 (1990).

Illinois law similarly does not permit defendant to sell or destroy arrestee property. Defendant has a duty "to protect an owner's property while it is in the custody of the police," *Colorado v. Bertine*, 479 U.S. 367, 372 (1987), which, under Illinois law, is a constructive bailment. *Arsberry v. State of Illinois*, 32 Ill. Ct. Cl. 127 (1978). The general rule is that "[t]he loss of [or] damage to bailed property while in the possession of the bailee raises a presumption of negligence which the bailee must rebut by evidence of due care." *Id.* at 129. Defendant cannot rebut this presumption because it intentionally sells or destroys arrestee property.

Plaintiffs show below that there is no merit in defendant's argument that it may lawfully destroy the property of arrestees who are being held in custody awaiting trial.

## II. Defendant Mistakenly Relies on Forfeiture Cases

Defendant mistakenly relies on forfeiture cases to support its argument about police powers. (ECF No. 207 at 6-9.) These cases apply the rule that governmental action "does not effect a taking if it 'substantially ad-

vance[s] legitimate state interests.'" *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1023–24 (1992) (internal citations omitted). Nothing in defendant's policy to sell or destroy arrestee property furthers any legitimate state interest.

In contrast, there is an unquestionable legitimate governmental interest when property is seized through forfeiture. The personal property in such cases has been used for an improper purpose; forfeiture laws implement the ancient rule that "an owner's interest in property may be forfeited by reason of the use to which the property is put." *Bennis v. Michigan*, 516 U.S. 442, 446 (1996). *Bennis* traced this rule from *The Palmyra*, 12 Wheat. 1, 6 L.Ed. 531 (1827), a case involving the seizure of a privateer that had attacked a United States vessel, to *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974), where the Court upheld forfeiture of a yacht that had been used to transport controlled substances. *Bennis*, 516 U.S. at 446-450.

Unlike the cases cited by defendant, this case does not present any use of personal property for an improper purpose. For example, *Tate v. District of Columbia*, 627 F.3d 904 (D.C. Cir. 2010) (ECF No. 207 at 7-8), involved a governmental "practice of auctioning a vehicle when tickets go unpaid [which] is the culmination of a sort of graduated forfeiture process."

*Id.* at 909. The District of Columbia Circuit found that this practice "both deters drivers from committing traffic and parking infractions in the first instance and induces delinquents to pay penalties once incurred," and was therefore consistent with the forfeiture process the Supreme Court upheld in *Bennis*. *Id.* at 909.

Defendant also mistakenly relies on cases from the Federal Court of Claims. (ECF No. 207 at 4-6.) Each of these cases involved the power "to investigate, arrest, seize, impound, subject to forfeiture, or otherwise enforce criminal law." *Patty v. United States*, 136 Fed. Cl. 211, 214 (Fed. Ct. Cl. 2018).

In *Kam–Almaz v. United States*, 682 F.3d 1364 (Fed. Cir. 2012) (ECF No. 207 at 4-5), an ICE agent, who was acting as a Customs agent with the authority to seize and inspect property entering the United States, seized a laptop from the subject of an ICE investigation. *Id.* at 1366-67. The government kept the laptop for ten weeks and returned it in non-working condition. *Id.* at 1366. In ruling against the owner of the laptop who claimed "damages totaling $469,480.00 due to lost business contracts," *id.* at 1367, the Federal Circuit did not apply the Illinois rule of constructive bailment, see *Arsberry v. State of Illinois*, 32 Ill. Ct. Cl. 127 (1978), discussed above at 3, and held that there had not been any uncon-

stitutional taking because the property had been seized as part of a lawful investigation. *Id.* at 1371. The same is not true here, where defendant sold or destroyed arrestee property that was unrelated to any criminal investigation or prosecution.

*Seay v. United States*, 61 Fed. Cl. 32 (Fed. Ct. Cl. 2004), involved the retention of property during a criminal investigation, where "[t]he government lawfully seized the plaintiff's property and held it for the duration of a criminal investigation." *Id.* at 35. Unlike this case, in *Seay* "the government eventually returned the plaintiff's possessions." *Id.* at 34. Here, defendant sold or destroyed plaintiffs' possessions.

In *Jarboe–Lackey Feedlots, Inc. v. United States*, 7 Cl. Ct. 329 (Fed. Ct. Cl. 1985) the United States Marshal seized beef and offal subject to a seizure and condemnation action for violation of FDA regulations. Unlike the seizure of "non-compliant" arrestee property in this case, the "seizure of meat unlawfully implanted with a prohibited drug is an inherent exercise of the police power." *Id.* at 339.

In *Alde, S.A. v. United States*, 28 Fed. Cl. 26 (Fed. Ct. Cl. 1993), the Customs Service seized an aircraft for failure to request landing rights in violation of 19 U.S.C. § 1436. Thereafter, the government instituted forfei-

ture proceedings, but eventually returned the aircraft to its owner. *Id.* at 28-29.

In this case, plaintiffs lawfully possessed various pieces of property when they were arrested. There is no allegation that the property was contraband, had been used to commit a crime, or was evidence of a crime. Defendant should not be heard to claim that it may seize *any* property possessed by a person simply because he (or she) has been accused of a crime. "If defendant's position is the law, the police power would swallow private property whole." *Patty v. United States*, 136 Fed. Cl. 211, 315 (Fed. Ct. Cl. 2018).

### III. Conclusion

For the reasons above stated and those previously advanced, the Court should reconsider its order of February 10, 2016 (ECF No. 95), deny defendant's motion to dismiss plaintiffs' Fifth Amendment claim, and schedule such further proceedings as may be appropriate.

               Respectfully submitted,

   /s/ <u>Kenneth N. Flaxman</u>
      Kenneth N. Flaxman
      ARDC No. 830399
      Joel A. Flaxman
      200 S Michigan Ave Ste 201
      Chicago, IL 60604-2430
      (312) 427-3200
      *Attorneys for the Plaintiff Class*